The Hunt Transition and Inaugural Fund, Inc. ("the Fund"), appeals from the trial court's judgment directing the disposition of money held by the Fund. Because we hold that the trial court lacked subject-matter jurisdiction, because of the absence of a justiciable controversy, and, thus, that its judgment is void, we vacate that judgment and dismiss the appeal.
The Fund was incorporated in December 1986 for the purpose of "provid[ing] a non-profit organization to receive and administer funds provided by contributions, subscriptions and other sources." The articles of incorporation provide that the funds are to be used for the following purposes:
 "(a) effect an orderly and efficient transfer of the Office of Governor of Alabama to Honorable Guy Hunt, Governor-Elect;
 "(b) defray a part of the costs of the inauguration of Governor Hunt;
 "(c) renovate and improve the building provided by the State as a residence for the Governor and his family and known as the Governor's Mansion[;]
 "(d) assist the Governor and his staff to promote the general interest and welfare of the State of Alabama and its people in various other ways including, without being so limited, through attracting additional business and industry to the state, advertising the state and its resources and supporting other organizations with similar or like purposes[; and]
 "(e) promote or carry out other scientific, educational, civic, patriotic, political, historical, literary, religious or charitable purposes as may be permitted by law and are not inconsistent with the provisions of [the] [a]rticles of [i]ncorporation."
Except for its initial, organizational meeting in February 1987, the Fund's board of directors did not meet until after this action had been filed.
Governor Guy Hunt was elected in 1986 and was reelected in 1990 to a second four-year term. In 1993, he was convicted of converting Fund money for his direct personal gain, in violation of the Alabama Code of Ethics for Public Officials, Ala. Code 1975, § 36-25-5, and was removed from office. See Ex parte Hunt, 642 So.2d 1060 (Ala. 1994). As part of his sentence, Hunt was ordered to pay approximately $200,000 in restitution to the Fund. In March 1998, Hunt made his final restitution payment. In February 1999, John Grenier, as chairman, president, and a director of the Fund, petitioned for a judicial determination, or, in the alternative, a declaratory judgment, naming the Fund and Attorney General Bill Pryor as defendants. Grenier alleged that, because Hunt was *Page 272 
not then Governor nor a candidate for Governor, "there is no present possibility that the purposes for which the Fund was formed can be served by the Fund"; that, because the board of directors had not met for several years, there was uncertainty "about the disposition of the remaining funds which include recently received contributions from [Hunt]," that is, the restitution payments by Hunt; and that "a justiciable controversy exists on the exact determination of these funds." Grenier further alleged that Attorney General Pryor is a necessary party if the court determines that the money should be conveyed to the State. The other directors of the Fund moved to dismiss Grenier's petition, asserting that Grenier had presented no justiciable controversy. Grenier amended his petition to include an interpleader count and moved to strike the motion to dismiss filed by the Fund's other directors, asserting that they lacked standing to move to dismiss. Grenier claims that the proper defendant is the Fund and that the directors have not moved to intervene or to be made parties to the lawsuit.
Attorney General Pryor answered and cross-claimed, asserting that the Fund had failed to hold annual meetings or to take any action to further its corporate purpose and that it had thereby abandoned its corporate franchise. He also asserted that under the Fund's articles of incorporation the only remaining valid purpose for which funds can be dispersed is the renovation and improvement of the Governor's Mansion. After the lawsuit was filed, the Fund had called a meeting; the attorney general was concerned that the Fund would dispose of its moneys before the court made a determination, so he sought a temporary restraining order ("TRO"); the court entered a TRO restraining the Fund from "disbursing" its funds.
Grenier subsequently paid the Fund's money (a total of $216,715.50) into court.[1] The Fund moved to dismiss on the basis of a failure to state a claim on which relief could be granted and on the basis that the case presented no justiciable controversy. The court denied the motion to dismiss, set a date for the final hearing, and ordered that the TRO remain in effect until that date.
After conducting a hearing, the trial court entered an order directing payment of the Fund's only outstanding debt, awarding attorney fees to Grenier's counsel, and ordering that the remainder of the paid-in funds "be paid to the Governor's Mansion Advisory Board" for the maintenance and upkeep of the Governor's Mansion. The Fund appeals from that order.
The Fund argues that Grenier presented no justiciable controversy to confer on the trial court jurisdiction to grant declaratory relief. We agree.
For a court to grant declaratory relief, it must have before it a bona fide, presently existing justiciable controversy that affects the legal rights or obligations of the parties. See King v. Calhoun CommunityCollege, 742 So.2d 795, 797 (Ala. 1999); see also State ex rel. Baxleyv. Johnson, 293 Ala. 69, 73, 300 So.2d 106, 110 (1974) ("There must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief under the declaratory judgment statutes, and if there was no justiciable controversy existing when the suit was commenced the trial court had no jurisdiction."). "Unless the trial court has before it a justiciable controversy, it lacks subject matter *Page 273 
jurisdiction and any judgment entered by it is void abinitio." Ex parte State ex rel. James, 711 So.2d 952, 960 n. 2 (Ala. 1998) (citing Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945
(Ala. 1994); Luken v. BancBoston Mortg. Corp., 580 So.2d 578 (Ala. 1991); Wallace v. Burleson, 361 So.2d 554, 555-56 (Ala. 1978)).
This Court has held that a declaratory-judgment action will not lie for an anticipated or future controversy. See Luken v. BancBoston Mortg.Corp., supra, 580 So.2d at 580; Graddick v. Phillips, 448 So.2d 333, 336
(Ala. 1984). In Smith v. Alabama Dry Dock Shipbuilding Co.,293 Ala. 644, 309 So.2d 424 (1975), this Court held that there was no justiciable controversy in an action filed by a corporation seeking a declaratory judgment upholding a proposed retirement plan for certain corporate employees. The corporation named as defendants individual stockholders of the corporation who had voted against the proposed retirement plan and who were expected to contest the legality of any payments to be made under the plan. The trial court entered a summary judgment in favor of the corporation. On appeal by the defendant shareholders, this Court dismissed the appeal because there was no justiciable controversy, and, thus, the trial court lacked jurisdiction. This Court stated:
 "A justiciable controversy does not exist merely because a stockholder disagrees with management or votes his stock contrary to management's position. [The defendant's] statements . . . refer to matters which may or may not occur in the future. The complaint itself alleges that the `Retirement Plan will or may be contested by [the defendants].' Allegations which merely show that the plaintiff anticipates such a controversy may arise are not sufficient to invite judicial declaration of rights."
Smith, 293 Ala. at 651, 309 So.2d at 429 (citations omitted).
Similarly, in this case, a justiciable controversy does not exist merely because the Fund's board of directors has "not met for a number of years," because "[Grenier] is in doubt as to the proper disposition of [the] funds," or because Grenier anticipates that the board of directors of the Fund may sometime in the future use the Fund's moneys for an ultra vires purpose. The fact that the board of directors had never met (other than for its initial, organizational meeting) at the time Grenier filed his complaint to determine the proper disposition of the funds strongly indicates that no controversy then existed as to the use of the Fund moneys. Indeed, Grenier himself could have called a meeting of the board of directors for the purpose of determining the proper disposition of the funds. But, instead of asking the board of directors to determine the proper disposition of the funds — the very function of the board, Grenier sought the "guidance" of the court. The evidence in the record simply does not indicate any dispute between the other directors and Grenier over the use of the funds.
Although the trial court enjoined the Fund from disposing of its funds, the testimony in the record indicates that after Grenier filed his complaint the board met two or three times "[t]o discuss what might be done with the money held by the [Fund]," but that the board never voted on how to use it. Because the board of directors has taken no action as to the use of the funds, it is not certain that the funds will ever be used for purposes not permitted under the articles of incorporation.[2] *Page 274 
We hold that Grenier's allegations are insufficient to confer on the trial court jurisdiction to grant declaratory relief and to direct the disposition of the moneys held by the Fund. Because no justiciable controversy exists between the parties, the trial court lacked subject-matter jurisdiction to enter its judgment; therefore, that judgment is void. Accordingly, because a void judgment will not support an appeal, we vacate the trial court's judgment and dismiss the appeal. See Luken, 580 So.2d at 581; Underwood v. State, 439 So.2d 125, 128
(Ala. 1983); Smith, 293 Ala. at 652, 309 So.2d at 430; State ex rel.Baxley, 293 Ala. at 75, 300 So.2d at 111.
JUDGMENT VACATED; APPEAL DISMISSED; MOTION FOR ATTORNEY FEES ON APPEAL DISMISSED AS MOOT.
HOOPER, C.J., and MADDOX, COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
[1] We note that the record does not indicate that Grenier was authorized by the Fund's bylaws or by its board of directors to pay the Fund's money into the court.
[2] Contrary to Grenier's allegation that no corporate purpose remains to be served, viable uses of the funds still exist under the Fund's articles of incorporation, notwithstanding that Hunt is no longer Governor. The trial court, in its order, directed that the funds be used for one of these purposes — to improve the Governor's Mansion.