[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 974 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 975 
Secretary of State Beth Chapman,[1] Jefferson County Registrar Nell Hunter, and the State of Alabama (collectively "the defendants") appeal from a judgment in favor of Richard Gooden and Angela Thomas, as class representatives in a putative class action involving the voting rights of convicted felons. We reverse the judgment in part and dismiss the appeal in part.
In June 1996, the citizens of Alabama ratified Amendment No. 579 to Ala. Const. 1901, § 177. As amended, § 177 provides, in pertinent part:
 "(a) Every citizen of the United States who has attained the age of eighteen years and has resided in this state and in a county thereof for the time provided by law, if registered as provided by law, shall have the right to vote in the county of his or her residence. The Legislature may prescribe reasonable and nondiscriminatory requirements as prerequisites to registration for voting. The Legislature shall, by statute, prescribe a procedure by which eligible citizens can register to vote.
 "(b) No person convicted of a felony involving moral turpitude, or who is mentally incompetent, shall be qualified to vote until restoration of civil and political rights or removal of disability."
(Emphasis added.)
On March 18, 2005, Attorney General Troy King issued an opinion in response to questions posed to him by William C. Segrest, then executive director of the Board of Pardons and Paroles (Op. Att'y Gen. 2005-092). Those questions, among others, in the order in which we think they apply here, were: (1) "If an individual has been convicted solely of [a felony not involving moral turpitude], does he or she remain eligible to vote?" (2) "Is an individual eligible under section 15-22-36.1 of the Code of Alabama to apply to the Pardons and Paroles Board for certification for eligibility to vote if he or she has not committed a crime involving moral turpitude?" and (3) "What specific felonies do not include moral turpitude?"
The opinion answered question one in the affirmative and question two in the negative. With regard to question two, it said: "If a person has been convicted of a felony that does not involve moral turpitude, that person remains eligible to vote and is therefore ineligible to apply for a Certificate of Eligibility to Register to vote."
With regard to question three, the opinion stated, in pertinent part:
 "Although this Office cannot provide an exhaustive list of every felony involving moral turpitude, we can provide a list of the crimes that Alabama courts have determined to be crimes involving moral turpitude. It is important to note that the following crimes will only prohibit a person from voting if that person has been convicted of a degree of one of these crimes that is considered a felony. The Alabama Supreme [C]ourt stated that murder, rape, burglary, robbery, and income tax evasion have all been found to be crimes involving moral turpitude. *Page 977 Ex parte McIntosh, 443 So.2d 1283 (Ala. 1983) (citations omitted).
 "In addition, forgery (Moton v. State, 13 Ala.App. 43, 69 So. 235 (1915)), conspiracy to commit fraud ([G.M. Mosley Contractors, Inc. v.] Phillips, 487 So.2d [876,] 879 [(Ala. 1986)]), aggravated assault (Johnson v. State, 629 So.2d 708 (Ala.Crim.App. 1993)), possession of marijuana for resale (McIntosh, 443 So.2d at 1286), sale of marijuana (Gholston v. State, 338 So.2d 454 (Ala.Crim.App. 1976)), manslaughter (Johnson v. State, 357 So.2d 162
(Ala.Crim.App. 1978)), theft (Johnson v. State, 292 Ala.208, 291 So.2d 336 (Ala. 1974)), transporting stolen vehicles across state lines (Matthews v. State, [51 Ala.App. 417,] 286 So.2d 91 (Ala.Crim.App. 1973)), unauthorized sale of a controlled substance (Ex parte Bankhead, 585 So.2d 112 (Ala. 1991)), and bigamy (Lawson v. State, [33 Ala. App. 343,] 33 So.2d 388
(Ala.App. 1948)) have all been held to be crimes involving moral turpitude.
 "In addition, section 15-22-36.1 of the Code of Alabama provides the following list of felonies involving moral turpitude that will preclude an individual from applying to have his or her civil and political rights restored:
 "`A person who has lost his or her right to vote by reason of conviction in a state or federal court for any of the following will not be eligible to apply for a Certificate of Eligibility to Register to Vote under this section: Impeachment, murder, rape in any degree, sodomy in any degree, sexual abuse in any degree, incest, sexual torture, enticing a child to enter a vehicle for immoral purposes, soliciting a child by computer, production of obscene matter involving a minor, production of obscene matter, parents or guardians permitting children to engage in obscene matter, possession of obscene matter, possession with intent to distribute child pornography, or treason.'
 "Ala. Code § 15-22-36.1(g) (Supp. 2004) (emphasis added).
 "Alabama courts have also discussed crimes that do not involve moral turpitude. In McIntosh, the Supreme Court stated that both assault and doing business without a license are not crimes involving moral turpitude. McIntosh, 443 So.2d at 1286. In addition, violation of liquor laws (Parker v. State, 280 Ala. 685, 198 So.2d 261 (1967)), aiding prisoner to escape (now listed in the Alabama Code as permitting or facilitating escape) (McGovern v. State, 44 Ala.App. 197, 205 So.2d 247 (1967)), mere possession of marijuana (Neary v. State, 469 So.2d 1321
(Ala.Crim.App. 1985)), and driving under the influence (Finley v. State, 661 So.2d 762
(Ala.Crim.App. 1995)) have all been held to be crimes that do not involve moral turpitude."
Op. Att'y Gen. 2005-092, pp. 3-4. On May 27, 2005, then Secretary of State Nancy Worley notified Hunter and every other voter registrar in the State that she was seeking advice from the attorney general regarding which felonies were disfranchising.
On September 29, 2005, Gooden filed a complaint in the Jefferson Circuit Court styled "complaint for declaratory judgment, temporary restraining order, mandatory injunction, and writ of mandamus." Naming Nell Hunter and then Secretary of State Nancy Worley as defendants, Gooden alleged that he "was registered to vote from the mid-1960s until 2000, when he was convicted of felony driving under the influence of alcohol (DUI), and [was] told by the State of Alabama that his voting rights were revoked." More specifically, the complaint alleged, in pertinent part: *Page 978 
 "11. The Board of Pardons and Paroles ['the Board'] issued a press release . . . upon information and belief, to effectuate the intent and substance of the attorney general's opinion. . . . The press release noted that . . . the Board . . . `discovered that many eligible voters [were] unaware' that they did not need a `certificate from this agency in order to register to vote.' `Under the current law only felonies involving moral turpitude disqualify a person from voting. Convictions for other felonies do not disqualify a person from voting. If individuals who are already eligible to vote do not ask us for certificates, we can process the other applications more promptly.' While the press release did not provide an exhaustive list of felonies involving moral turpitude, it noted that `felony driving under the influence' and `felony possession of drugs' are offenses that do not involve moral turpitude.
 "12. Notwithstanding the clear direction provided by the attorney general's opinion, and the press release that was issued by the [Board], local registrars represented to agents of [Gooden's] counsel that registrars in . . . twenty counties . . . were directed by the secretary of state not to register people with felony convictions
— whether or not the felony involved moral turpitude — without a certificate of eligibility.
 "13. On September 21, 2005, [Gooden] attempted to register with [Hunter], but was told that he was `not eligible' to register to vote because of his felony DUI conviction.
 "14. [Gooden] was instructed by [Hunter] to apply to the [Board] for a certificate of eligibility.
 "15. [Gooden] was told later that day (September 21, 2005) by an employee of the [Board] that since his felony DUI conviction did not involve moral turpitude, the attorney general had determined that he, and similarly situated individuals, need not apply for a certificate of eligibility since their voting rights were never lost.
 "16. Upon information and belief, an employee of the [Board] telephoned [Hunter] on September 21, 2005, and explained that [Gooden] was not disqualified from voting since his felony conviction did not involve moral turpitude, and, therefore, that a certificate of eligibility was not necessary for him to register to vote. Upon information and belief, the employee of the [Board] also offered to fax [Hunter] a copy of the press release the Board had issued to this effect.
 "17. Upon information and belief, notwithstanding [the Board's] concession that [Gooden's] felony DUI conviction did not involve moral turpitude, and that, in fact, his conviction was expressly identified in the attorney general's opinion as [a] non-disqualifying crime, [Hunter] told the [Board] that the Defendant secretary of state had directed [her] not to register individuals with felony convictions who had not obtained a certificate of eligibility, irrespective of whether or not such felony convictions involved moral turpitude."
(Emphasis added.)
Counts one and two of the complaint alleged a violation of § 177. In particular, count two alleged that registrars throughout the State, acting on a misrepresentation of the secretary of state, had refused to register individuals legally eligible to vote. Count three sought, pursuant to former Ala. Code 1975, § 17-4-124,[2] a reversal *Page 979 
of Hunter's refusal to allow Gooden to register.
Under the heading, "prayer for relief," the complaint stated:
 "30. [Gooden] requests an order under [§ 17-4-124] reversing the refusal of [Hunter] to register him.
 "31. [Gooden] seeks [a] declaratory judgment that individuals convicted of felonies not involving moral turpitude, as enumerated by the attorney general and grounded in Alabama case law, are eligible to register and vote under Alabama law, and that, accordingly, individuals with felony convictions not involving moral turpitude need not apply to the [Board] for a certificate of eligibility as a prerequisite to registering or voting in Alabama.
 "32. [Gooden] requests a . . . mandatory injunction . . . to require [Hunter] to provide [him] and similarly situated individuals in Jefferson County, by Friday, September 80, 2005, the registration deadline for the October 11, 2005, municipal elections in Birmingham, Alabama, effective notice that individuals with felony convictions not involving moral turpitude are eligible to vote without a certificate of eligibility from the [Board].
 "33. [Gooden] requests a . . . mandatory injunction . . . to require [Hunter] to register [him] and similarly situated individuals in Jefferson County, by Friday, September 80, 2005, the registration deadline for the October 11, 2005, municipal elections in Birmingham, Alabama.
 "34. [Gooden] requests a . . . mandatory injunction . . . to require [the] secretary of state to provide effective notice to [Hunter] by September 80, 2005, and each of the other counties promptly, that individuals with felony convictions not involving moral turpitude, as enumerated by the attorney general, are eligible to register and vote, and are not required to apply for or obtain a certificate of eligibility from the [Board].
 "35. [Gooden] requests a . . . mandatory injunction . . . to require [the] secretary of state to direct [Hunter] by September 80, 2005, and each of the other counties promptly, to permit individuals with felony convictions not involving moral turpitude, as enumerated by the attorney general, to register to vote and expressly state that such individuals are not required to apply for or obtain a certificate of eligibility from the [Board].
 "36. [Gooden] requests a temporary restraining order and mandatory injunction to require [the] secretary of state to give notice to the public by (a) posting a prominent notice on the secretary of state website . . . and (b) issuing a press release to all the usual news outlets notified by the secretary of state that persons who have been convicted of a felony which does not involve moral turpitude [sic] and listing the examples of those crimes as discussed in the [opinion] of the attorney general, Ala. Op. Atty. Gen. No. 2005-092 (March 18, 2005)."
(Emphasis added.) The following day, September 80, 2005, the trial court entered an order directing Hunter, "upon a new application by plaintiff [Gooden], [to] register him as a voter as provided in Ala. Code [1975,] § [17-4-124]."
In November 2005, the secretary of state conducted a series of meetings with registrars throughout the State. Under the topic of "ex-felon registration," she advised registrars at those meetings to *Page 980 
"continue longstanding practice until [receipt of a] response by the attorney general" to her May 2005 inquiry.
On November 18, 2005, the attorney general, on behalf of the State of Alabama, moved to intervene in the case, contending that the State was the only proper party to respond to count three. Filed simultaneously with that motion was the "answer of the State of Alabama confessing judgment on count three of plaintiffs complaint." (Emphasis added.) The answer acknowledged that Gooden's felony conviction — driving under the influence — is not a crime involving moral turpitude, and, therefore, that he was not barred from registering and voting by § 177(b). The State "submitted] that [Gooden's] remaining claims and requests for relief should be dismissed as moot and for lack of standing." Also in November 2005, Hunter and the secretary of state each filed a motion to dismiss the action. Both parties asserted that the State's confession of judgment in favor of Gooden rendered the action moot and deprived Gooden of standing.
On December 19, 2005, Gooden filed a "first amended complaint," purporting to add as a plaintiff Andrew Jones, who, like Gooden, was a resident of Jefferson County. Jones alleged that he had been "informed by the State of Alabama" in the "early 1990s" that he was not eligible to vote because of a conviction for "felony possession of drugs." He alleged that in June 2005 Hunter initially refused to allow him to register, notwithstanding the fact that his felony conviction was for a crime not involving moral turpitude. However, Jones also alleged that before he joined this action he was allowed to register to vote.
The amended complaint also contained class allegations. Specifically, it sought certification of a class of plaintiffs consisting of "[a]ll unregistered persons otherwise eligible to register to vote in Alabama who have been convicted of one or more felonies, but who have not been convicted of any felonies involving moral turpitude." It also sought certification of adefendant class consisting of "[a]ll voter registrars in the State of Alabama." Other than the class allegations and the addition of Jones, the first amended complaint differed in no material respect from the original complaint.
On January 10, 2006, a copy of the attorney general's March 18, 2005, opinion was sent to every board of registrars in the State, and the registrars were invited to seek the advice of the attorney general, if necessary, in determining whether a particular felony involved moral turpitude. By May 8, 2006, the secretary of state had promulgated revised voter-registration forms for statewide use. The new forms state, in pertinent part: "To register to vote in the State of Alabama, you must . . . [n]ot have been convicted of a disqualifying felony, or if you have been convicted, you must have had your civil rights restored." (Emphasis added.) Also on the revised forms, the registrant's signature is required, by which he or she swears or affirms: "I am not barred from voting by reason of adisqualifying felony conviction." (Emphasis added.) The word "felony" in the predecessor forms was not modified by the word "disqualifying."[3]
On May 8, 2006, Gooden and Jones filed a "second amended complaint," asserting — for the first time — a violation of due process and/or equal protection under the *Page 981 
United States Constitution. Specifically, count six alleged, in pertinent part:
 "88. The promulgation and use of [the new] voter registration forms . . . is misleading and serves to discourage registration of persons who have been convicted of felonies not involving moral turpitude.
 "89. The secretary of state violates section 177 of the Constitution of the State of Alabama by the promulgation and use of [the new registration forms].
 "90. The secretary of state violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States and Section 1 of the Constitution of the State of Alabama by the promulgation and use of [the new registration forms]."
(Emphasis added.)
The second amended complaint also sought an award of attorney fees under 42 U.S.C. § 1988. In other respects, the second amended complaint essentially restated the allegations of the previous complaints.
On May 26, 2006, Gooden and Jones filed a "third amended complaint," which was superseded on June 9, 2006, when Gooden and Jones filed a fourth, and last, amended complaint, purporting to add plaintiff Angela Thomas, who, like Gooden and Jones, was a resident of Jefferson County. According to the last amended complaint, Hunter had removed Thomas's name from the voter registry in 2003 following Thomas's "conviction for possession of marijuana (first degree)," which is not a crime involving moral turpitude.
The last amended complaint differed little substantively from the second amended complaint. Under the heading "prayer for relief," Gooden, Jones, and Thomas sought an order "reversing the defendants' refusal to register them." Relief sought under that heading also included an "injunction to require [the] secretary of state to give notice to the voter registrars of all felonies that have been declared to be crimes involving moral turpitude and all felonies that have been declared not to be crimes involving moral turpitude." It also contained the federal constitutional claims set forth in count six of the second amended complaint.
On June 23, 2006, Hunter notified Thomas through counsel that Thomas was eligible to vote, notwithstanding her conviction, and that Thomas "should submit an application," which would be accepted if she was "otherwise eligible." Thereafter, on July 7, 2006, all the defendants moved for a summary judgment, arguing, among other things, that the case no longer involved a justiciable controversy because "what the plaintiffs [sought] to compel through injunction ha[d] already happened," namely, that "the plaintiffs [were] all either registered to vote or ha[d] been informed that they [could] do so." They further argued that the plaintiffs wanted (1) "the county Boards of Registrars to be given certain advice that they ha[d] already received"; (2) "a judgment declaring the law to be what all parties agree that it is"; and (3) "forms to be revised that have already been revised." That same day, Gooden, Jones, and Thomas moved for a summary judgment on counts one, two, three, and six of their last amended complaint.[4]
On August 23, 2006, the trial court entered a "class certification order and final order on all pending issues." In so doing, *Page 982 
it granted the attorney general's motion to intervene and entered a summary judgment for the defendants on two counts of the last amended complaint.[5] It also entered a summary judgment for the defendants on all Jones's claims, on the ground that Jones lacked standing.[6] Also, it held that Gooden's individual claims were moot and that Thomas's individual claims were time-barred.
Nevertheless, the trial judge certified a plaintiff class and a defendant class, before granting the plaintiffs declaratoryand equitable relief. The plaintiff class was defined as "[e]very citizen of the United States, currently residing in this State and 18 years of age or older, who has at any time been convicted of a felony in any jurisdiction and who is not, as of the date of this order, registered to vote in this State." He defined the defendant class as "[e]very individual duly appointed and presently serving in an official capacity as a registrar for the purpose of conducting, supervising or otherwise regulating the registration of voters in the county where such individual resides."
In paragraph 7 of the order, the judge stated:
 "7. The court hereby declares that the policy and practice previously promulgated or employed by the defendants of denying voter registration to an individual otherwise qualified to vote, but who had been convicted of any felony, violated Amendment 579 to the Alabama Constitution. This policy and practice further violated the due process rights of the plaintiff class members provided by the Alabama Constitution. The named defendants, all members of the defendant class, and all those who work with or on behalf of any of the defendants or defendant class members, are ordered immediately to cease and desist in refusing voter registration on this basis."
(First emphasis added.) According to Gooden and Thomas, "paragraph 7 of the circuit court's order provided preciselythe relief requested by the Plaintiffs." Gooden and Thomas's brief, at 49 n. 13 (emphasis added).
However, the trial judge went much further. He concluded that the "disfranchisement provision of [§ 177(b)] authorizes the imposition of a criminal penalty," and, consequently, could, consistent with the separation-of-powers provisions of the Alabama Constitution, be imposed only by the legislature. As a corollary, he concluded that the definition of moral turpitude is so vague as to invalidate disfranchisement on that basis, unless and until every felony involving that element hasbeen expressly cataloged by the legislature. Specifically, he stated:
 "8. Unless and until the Alabama Legislature passes, and the Governor signs into law, legislation specifically identifying which felonies involve moral turpitude . . ., the named defendants, all members of the defendant class, and all those who work with or on behalf of any of the defendants or defendant class members, are enjoined from refusing to register any individual, otherwise qualified to vote, on the ground that the individual has previously been convicted of a felony.
 "9. Unless and until the Alabama Legislature passes, and the Governor signs into law, legislation specifically identifying which felonies involve moral turpitude . . ., the named defendants, all *Page 983 
members of the defendant class, and all those who work with or on behalf of any of the defendants or defendant class members are enjoined from promulgating, distributing or employing voter registration application forms that refer in any way to a prior criminal conviction as a basis of disqualification. The defendant secretary of state is further ordered to revise existing voter registration application forms to delete any such references.
 "10. Unless and until the Alabama Legislature passes, and the Governor signs into law, legislation specifically identifying which felonies involve moral turpitude . . ., the named defendants, all members of the defendant class, and all those who work with or on behalf of any of the defendants or defendant class members, are enjoined from removing from voter lists any registered voter by reason of that voter's conviction of a felony."
(Emphasis added.) In other words, the trial court's judgment requires that all felons who are otherwise qualified to votebe permitted to vote until the enactment and gubernatorial approval of a statute naming all disqualifying felonies. In essence, as a basis for the relief granted in paragraphs 8-10, the court held that § 177(b) deprives the plaintiffs of the due process guaranteed by Ala. Const.1901, §§ 6 and 13, in the absence of a complete catalog of disqualifying felonies supplied by the legislature.
Additionally, the court awarded attorney fees and expenses to the plaintiffs' attorneys in the amount of $66,024. From that judgment, the defendants appealed. On appeal, they reiterate their argument that the claims asserted by Gooden and Thomas have become moot, and, therefore, that this case no longer involves a justiciable controversy. In that connection, they argue that Gooden and Thomas never challenged the constitutionality of § 177(b), "never claimed that the framework of [Amendment No. 579] violates [the] separation of powers or their rights to due process," and "never briefed [such issues] in the trial court." Defendants' brief, at 49. Thus, they insist that the relief afforded in paragraphs 8-10 was never requested by Gooden and Thomas and was erroneously awarded. Finally, they challenge the award of attorney fees.
 I. Justiciable Controversy
"`A moot case or question is a case or question in or on which there is no real controversy; a case which seeks to determine an abstract question which does not rest on existing facts or rights, or involve conflicting rights so far as plaintiff is concerned.'" Case v. Alabama State Bar, 939 So.2d 881,884 (Ala. 2006) (quoting American Fed'n of State, County Mun. Employees v. Dawkins, 268 Ala. 13, 18,104 So.2d 827, 830-31 (1958)). "The test for mootness is commonly stated as whether the court's action on the merits would affect the rights of the parties." Crawford v. State,153 S.W.3d 497, 501 (Tex.App. 2004) (citing VE Corp. v. Ernst Young, 860 S.W.2d 83, 84 (Tex. 1993)). "A case becomes moot if at any stage there ceases to be an actual controversy between the parties." Id. (emphasis added) (citing National Collegiate Athletic Ass'n v. Jones,1 S.W.3d 83, 86 (Tex. 1999)).
"There must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief under the declaratory judgment statutes, and if there was no justiciable controversy existing when the suit was commenced the trial court had no jurisdiction." State ex rel. Baxley v. Johnson,293 Ala. 69, 73, 300 So.2d 106, 110 (1974). "`"Unless the trial court has before it a justiciable controversy, it lacks *Page 984 
subject matter jurisdiction and any judgment entered by it is void ab initio."'" Sustainable Forests, L.L.C. v. AlabamaPower Co., 805 So.2d 681, 683 (Ala. 2001) (quoting HuntTransition Inaugural Fund, Inc. v. Grenier,782 So.2d 270, 272 (Ala. 2000), quoting in turn Ex parte State ex rel.James, 711 So.2d 952, 960 n. 2 (Ala. 1998)). "A moot case lacks justiciability." Crawford, 153 S.W.3d at 501. Thus, "[a]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events."Case, 939 So.2d at 884 (citing Employees ofMontgomery County Sheriffs Dep't v. Marshall,893 So.2d 326, 330 (Ala. 2004)).
"`The lack of a justiciable controversy may be raised either by a motion to dismiss, Rule 12, [Ala. R. Civ. P.], or a motion for summary judgment.'" Hornsby v. Sessions,703 So.2d 932, 937 (Ala. 1997) (quoting Smith v. Alabama Dry Dock Shipbuilding Co., 293 Ala. 644, 649, 309 So.2d 424, 427
(1975)). Indeed, "[i]t is well settled that lack of subject-matter jurisdiction can be raised at any time by the parties or by the court ex mero motu." Ex parte V.S.,918 So.2d 908, 912 (Ala. 2005). "`"[I]f there is an absence of jurisdiction over . . . the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent."'" Id. (quotingFlannigan v. Jordan, 871 So.2d 767, 768 (Ala. 2003), quoting in turn Norton v. Liddell, 280 Ala. 353, 356,194 So.2d 514, 517 (1967)). A court without subject-matter jurisdiction "`may take no action other than to exercise its power to dismiss the action. . . . Any other action . . . is null and void.'" State v. Property at 2018 RainbowDrive, 740 So.2d 1025, 1029 (Ala. 1999) (quoting Beachv. Director of Revenue, 934 S.W.2d 315, 318
(Mo.Ct.App. 1996)). An outstanding request for attorney fees "does not resuscitate an otherwise moot controversy."Cammermeyer v. Perry, 97 F.3d 1235, 1238 (9th Cir.1996). See also Lewis v. Continental Bank Corp.,494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).
 A. Paragraphs 8-10
We first address the defendants' contention that the trial court erred in ordering relief in paragraphs 8-10 of its order based on an issue never joined by the parties, namely, the constitutionality of § 177(b). We recognize the rule that a "final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Ala. R. Civ. P. 54(c). However, the rule has its limits:
 "`A court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings. . . . Unless all parties in interest are in court and have voluntarily litigated some issue not within the pleadings, the court can consider only the issues made by the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded.
 . . . .
 "`The foregoing rules are all fundamental and state nothing more than the essentials of due process and of fair play. They assure to every person his day in court before judgment is pronounced against him.'"
Central Bank of Alabama, N.A. v. Ambrose,435 So.2d 1203, 1206 (Ala. 1983) (quoting Sylvan Beach, Inc. v.Koch, 140 F.2d 852, 861-62 (8th Cir.1944)). The question thus resolves itself to whether the relief given by the trial court is based upon *Page 985 
issues that "were in the case." 435 So.2d at 1207
(emphasis added).
In this same connection, it hardly bears repeating that without specific statutory authority not here applicable Alabama courts are not empowered to decide "abstract or hypothetical questions or render purely advisory opinions." Alabama Dry Dock Shipbuilding Co., 293 Ala. at 651, 309 So.2d at 429. Thus, aside from creating the due-process problems discussed inAmbrose, if a trial court undertakes to decide a question, other than one presented by the parties, it enters the area of the "abstract or hypothetical" and therefore acts beyond its authority.
The rationale for the relief granted in paragraphs 8-10 can be syllogized as follows: (1) § 177(b) purports to disfranchise convicted felons on the basis of whether the felony of which they are convicted involves moral turpitude; (2) disfranchisement is part of the punishment for the crime of which they were convicted; (3) the definition of moral turpitude is vague as applied on a case-by-case basis; (4) that vagueness creates confusion among voters and registrars as to who is entitled to the franchise; (5) the confusion may result in the disfranchisement of voters convicted of nondisqualifying felonies; (6) the disfranchisement deprives qualified voters of due process; therefore the deprivation can be cured only by a complete catalog of disqualifying crimes supplied in due course by the legislature — the only body empowered to define crimes and to set the punishment therefor. The trial court effectively held that the courts of Alabama have no power to decide whether a crime involves moral turpitude.
Whatever merit this syllogism might have in the abstract, it has no application to this case. This is so, because this case does not involve a dispute about how to distinguish between felonies that involve moral turpitude and those that do not; instead, it involves the secretary of state and Hunter, acting upon direction from the secretary of state, ignoring thedistinction altogether and not attempting to apply the clear language of § 177(b). This fact is amply illustrated by the plaintiffs' pleadings in the trial court and Gooden and Thomas's arguments in this Court.
Although Gooden and Thomas have adapted their arguments in this Court to support the trial court's holding thatlegislative direction is required, their pleadings extol the direction provided by the attorney general in his opinion. In paragraph 12 of the original complaint, for example, Gooden lauded the attorney general's opinion of March 18, 2005, as providing "clear direction" and states that, "notwithstanding [that] clear direction," the secretary of state instructed Hunter and other registrars "not to register people with felony convictions — whetheror not the felony involved moral turpitude." (Emphasis added.) In paragraph 17 of the complaint, Gooden alleged that the secretary of state had directed Hunter "not to register individuals with felony convictions . . . irrespective
of whether or not such felony convictions involved moral turpitude," and that he was not permitted to register "notwithstanding" the fact that "his conviction was expressly identified in the attorney general's opinion as [a] non-disqualifying crime." (Emphasis added.)
Those allegations were repeated in substantially identical terms in the last amended complaint. In addition, the last amended complaint alleged that Thomas "would have been registered but for the illegal policy of the defendants to disfranchise all persons convicted of any
felony." (Emphasis added.) The relief sought in paragraphs 100, 101, and 102 of the last amended complaint essentially mirrors the relief sought in the paragraphs 31, 34, and *Page 986 
35 of the original complaint, namely, that the court declare "individuals convicted of felonies not involving moral turpitude, as enumerated by the attorney general . . ., are eligible to vote" (emphasis added), and issue an injunction requiring the secretary of state to direct Hunter and other registrars "promptly to permit individuals with felony convictions not involving moral turpitude to register to vote." Conspicuously absent is any allegation that Gooden, Thomas, or any putative class member was disfranchised as a result of any confusion over the particular nature of their felony. There was no allegation, for example, that any felon was erroneously allowed to vote notwithstanding that he or she had been convicted of a disqualifying felony.
Similarly, in their brief to this Court, Gooden and Thomas contend that the "[l]ongstanding practice" of the registrars was that "of categorically disfranchising individuals who had any felony conviction." Gooden and Thomas's brief, at 13 (first emphasis added). They argue that "[b]ycategorically disfranchising every person with a felony conviction without considering whether the felony in question involved moral turpitude, the Defendants have . . . disregarded the substantive mandate of Section 177 of the Alabama Constitution." Gooden and Thomas's brief, at 17 (emphasis added).
Significantly, Gooden and Thomas concede that paragraph 7 of the trial court's order "provided precisely the relief they sought. Gooden and Thomas's brief, at 49 n. 13 (emphasis added). However, the relief afforded in that paragraph was limited to (1) a declaration that "the policy and practice previously . . . employed by the defendants of denying voter registration to an individual . . . who had been convicted ofany felony" (emphasis in original) violated the Alabama Constitution, and (2) an order that the defendants "cease and desist in refusing voter registration on [that] basis" (emphasis added).[7] All matters relating to confusion over the meaning of the phrase "moral turpitude" were addressed in paragraphs 8-10 of the order. Gooden and Thomas's concession as to the sufficiency of paragraph 7 belies any argument that they were complaining about the inability of the registrars to understand, that is, to correctly apply, the definition of "moral turpitude."
Finally, there was no evidence, indicating that anyone has been disfranchised as the result of a decision on themerits applying the definition of moral turpitude. On the contrary, it is undisputed that Gooden, Jones, and Thomas had been denied the right to register without any concern as to the specific nature of their felonies. Consequently, we can only conclude that this action did not arise out of, and does not involve, the constitutionality of § 177 as applied; any matters relating to the trial court's syllogistic reasoning; or the purported evils that were the focus of paragraphs 8-10.
Because this case was never about the definition of moral turpitude, it involved no issue regarding the proper entities to apply the definition of that term to any particular felony. In addressing such issues, the trial court fundamentally recast the character of this case. In so doing, it entered the forbidden territory of the abstract and hypothetical and thereby exceeded its authority. It follows that *Page 987 
paragraphs 8-10 of the trial court's order are therefore void.[8]
 B. Paragraph 7
In their motion for a summary judgment, the defendants contended that the case had become moot because "nothing remain[ed] for [the] court to declare or enjoin." Therefore, they argued, the trial court "lack[ed] jurisdiction to do anything other than dismiss this action." In this Court, they insist:
 "Plaintiffs' claims for injunctive relief are moot because the actions Plaintiffs sought to compel have already happened. Gooden is already registered to vote and Thomas has been informed by [Hunter] that she may register.[9] Plaintiffs wanted the county boards of registrars to receive certain advice that they have already received. Plaintiffs wanted a judgment declaring the law to be what all parties agree that it is. Plaintiffs wanted [registration] forms to be revised that have already been revised. Nothing remains to be done by any of the Defendants that the trial court is authorized by law to direct."
Defendants' brief, at 36.
Gooden and Thomas argue that "defendants who seek to avoid judicial resolution of the merits (of an injunctive suit) by voluntarily terminating the complained-of conduct, `face a heavy burden to establish mootness.'" Gooden and Thomas's brief, at 26 n. 5 (quoting Iron Arrow Honor Soc'y v. Heckler,464 U.S. 67, 72, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983)). This burden is, as often stated, simply the need to demonstrate that the defendants will not "be free to `return to [their] old ways' after the threat of a lawsuit had passed." 464 U.S. at 72,104 S.Ct. 373 (quoting United States v. W.T. Grant Co.,345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). The burden is satisfied, however, by a showing that "`there is no reasonable likelihood that the wrong will be repeated.'"464 U.S. at 72, 104 S.Ct. 373 (quoting W.T. Grant Co.,345 U.S. at 633, 73 S.Ct. 894). Moreover, the "voluntary discontinuance" doctrine would seem to have no application where, as here, the voluntary acts are the dispositive acts of athird-party intervener. See id. (assuming, without deciding, that the doctrine applied to a "third party non-defendant," and holding, nevertheless, that the case was moot). In any event, the burden is satisfied in this case.
The focal point of the complaints in this case was the secretary of state. As Gooden and Thomas correctly note, the secretary of state is the "chief elections official in the state," former Ala. Code 1975, § 17-1-8(a) (now §17-1-3(a)), and is charged with the duty to "provide uniform guidance for election activities." Id. The secretary of state is invested with rule-making power to aid in the discharge of those duties. Id. See also former Ala. Code 1975, § 17-4-136 (now § 17-3-1) (the secretary of state "may promulgate rules for the receipt of applications forregistration and the expedient administration of those applications"). It was under this authority that the revised voter-registration forms were promulgated during the pendency of this action. The secretary of state is further authorized, pursuant to former § 17-4-151 (now § 17-3-3), to "remove for cause" registrars appointed under former § 17-4-150 (now § 17-3-2). Thus, the secretary *Page 988 
of state was sued, according to Gooden and Thomas, to compel her to obey the law as expressed by the attorney general in his opinion of March 18, 2005.
However, "`[t]he attorney general is . . . thechief law officer of the state, and on him are conferred various authorities and duties in connection with instituting and prosecuting, in the name of the state, suits and other proceedings . . . for the preservation and protection of the rights and interests of the state.'" Ex parteWeaver, 570 So.2d 675, 679 (Ala. 1990) (quoting State exrel. Carmichael v. Jones, 252 Ala. 479, 484, 41 So.2d 280,284 (1949)) (emphasis added). See, e.g., Ala. Code 1975, §36-15-21. Essentially "`all litigation concerning the interest of the state or any department thereof [lies] under the direction and control of the attorney general.'"570 So.2d at 679-80 (quoting State ex rel. Carmichael,252 Ala. at 484, 41 So.2d at 284).
That the attorney general has the "power to formulate legal policy" for the State, and, in connection therewith, the power to bind state officers and departments in litigation is well established. 570 So.2d at 681 (discussing with approvalFeeney v. Commonwealth, 373 Mass. 359, 368,366 N.E.2d 1262, 1267 (1977)). In Ex parte Weaver, supra, this Court held that the attorney general had "the authority to move to dismiss the State Department of Insurance's [appeal/mandamus petition] in the Court of Civil Appeals over the objection of the commissioner of insurance." 570 So.2d at 684. In so doing, it relied on State ex rel Carmichael v. Jones:
 "In [Jones], the attorney general brought a mandamus action to compel the trial court to enter a consent judgment in a case pending between the State Department of Revenue and several defendants. The question presented was whether the attorney general was authorized and empowered to settle a pending suit by the State filed by him in his official capacity for the collection of an unliquidated tax claim, by taking a consent judgment in the cause for less than the amount sued for and claimed to be due by the revenue department. This Court held `that the attorney general, as the chief law officer of the state, was fully empowered to make any bona fide disposition of the cause as in his judgment might be deemed to be to the best interest of the state unless inhibited by organic law.'"
Ex parte Weaver, 570 So.2d at 679 (emphasis added).
These principles are applicable here. Upon learning of this litigation, the attorney general intervened to assume control of the case, thereby eliminating any dispute regarding the duties of the secretary of state. When he joined this action on November 18, 2005, he brought with him the construction and application of § 177 advocated by the plaintiffs
and made it binding on the defendants. From that time until August 23, 2006, when the trial court entered its final judgment, it was undisputed that neither the plaintiffs nor any individuals similarly situated would be disfranchised solely on the basis of a felony conviction as had been the policy of Hunter and the secretary of state.
Indeed, the parties have stipulated that registrars in Jefferson and Houston Counties are now basing their decisions on whether the prospective voter's felony conviction involved moral turpitude and are no longer disfranchising anyone simply on the basis of a felony conviction. Considering the posture of this case, the identity of the parties, and the remedial action taken by Hunter and the secretary of state, we can foresee "`no reasonable likelihood that the wrong will be repeated.'"Heckler, 464 U.S. at 72, 104 S.Ct. 373 (quotingW.T. Grant Co., 345 U.S. at 632, 73 S.Ct. 894). *Page 989 
Gooden and Thomas also contend that the trial court was empowered to provide the relief afforded in paragraph 7 under an exception to the general mootness rule for cases involving "`a broad public interest.'" Gooden and Thomas's brief, at 20 (quoting Slawson v. Alabama Forestry Comm'n,631 So.2d 953 (Ala. 1994)). It is true that an exception exists for a "moot case involving issues of great public importance, which may recur in the future." 1A C.J.S. Actions § 81 (2005). "The criteria for applying the public interest exception to the mootness doctrine include the public nature of the question, the desirability of an authoritative determination for the purpose of guiding public officers, and the likelihood that the question will generally recur." Id. (footnote omitted). However, this "exception is construed narrowly . . . and a clear showing of each criterion is required to bring a case within its terms." In re Adoption of Walgreen,186 Ill.2d 362, 365, 238 Ill.Dec. 124, 710 N.E.2d 1226, 1227
(1999).
Although this case does involve a matter of public importance, the second and third factors in the analysis weighagainst the application of the "public-interest" exception. As we have already discussed, the conditions that gave rise to this action are unlikely to recur. Indeed, Nancy Worley, who was secretary of state when this action was filed, no longer serves as secretary of state. (See note 1.) Moreover, in view of the actions taken by the attorney general in this case, including the distribution of his March 18, 2005, opinion to the registrars throughout the State, as well as the action of the secretary of state herself, in revising the voter-registration forms, it is difficult to see how a judgment based on paragraph 7 would further enlighten the secretary of state or the registrars in the performance of their duties.
These factors, although not expressly considered inSlawson, weighed in favor of the application of the exception in that case. Slawson involved an action by Bart Slawson and Naomi Furman against the Alabama Forestry Commission ("the Commission") and others, challenging the Commission's financial "support of a private nonprofit organization known as Stewards of Family Farms, Ranches, and Forests ('Stewards')." 631 So.2d at 955. The action sought a judgment declaring, among other things, that the Commission had violated the Alabama Sunshine Law, Ala. Code 1975, §13A-14-2, by failing to "provide the public with notice of a meeting it held by special session . . . at which the Commission passed a resolution approving the use of Commission resources . . . in promoting Stewards. . . ." 631 So.2d at 955. They also "sought to enjoin the [Commission] from," among other things, "meeting in secret, [and] from meeting without prior public notice." Id. The trial court entered a summary judgment for the defendants. On appeal, the Commission contended that the notice issue was moot, because it had begun giving public notice of its meetings. 631 So.2d at 957. This Court, citing the public-interest exception, id., proceeded to address the merits and reversed the summary judgment. 631 So.2d at 959.
Slawson involved two notable features that distinguish it from this case. First, and perhaps most significantly, the Commission was still arguing on appeal that the statute didnot require that it provide notice. In particular, it sought to persuade this Court to "follow the Georgia Supreme Court, which [had] indicated that `[Georgia's] Sunshine Law deals with the openness of public meetings, not with the notice of such meetings.'" 631 So.2d at 958 (quoting Harms v.Adams, 238 Ga. 186, 187, 232 S.E.2d 61, 62 (1977)). Thus, unlike this case, the dispositive issue in *Page 990 Slawson, namely, the correct construction and application of the Alabama Sunshine Law, remainedcontroverted, even at the appellate stage. Here, by contrast, the dispositive issue, namely, the correct construction and application of § 177, has not been disputed by anyone since the intervention of the attorney general at the outset of the case.
Second, because of the continuing dispute in Slawson
over the necessity of notice, there was a reasonable probability that the challenged conduct would recur, absent a final judicial determination. In fact, the Commission had reversed its position on the notice issue more than once. It had provided public notice of its meetings in the past, "but [had] discontinued that practice because the public did not attend." 631 So.2d at 957. By the time the case reached this Court, the Commission was again providing public notice.Id. However, by pressing its position in this Court that notice was not required, the Commission signaled its unwillingness to abandon its claim of the right to discontinue giving notice at any time. By contrast, no one in this case is insisting, expressly or by implication, on the right to revive the prior policy of disfranchisement without regard to the nature of the felony conviction. For these reasons,Slawson is not controlling.
Next, Gooden and Thomas contend that, because this is a putative class action, mootness of the representative's claims does not necessarily moot the entire action. For that proposition, they cite Jones v. Southern United LifeInsurance Co., 392 So.2d 822 (Ala. 1981). Jones was a class action commenced by Mary Jones against Southern United Life Insurance Company ("Southern United"). Jones, the beneficiary of a burial-insurance policy issued by Southern United, sought the payment of interest allegedly due between the dates of proof of the death of the named insured and the date of the payment of the policy proceeds. Id. at 822-23. Shortly after the action began, Southern United "tendered payment of interest from the date of death to the date of payment of the benefit," and filed motions to deny class certification and for a summary judgment. Id. at 823. The trial court granted the motions, and Jones appealed.Id.
One question on appeal was whether "Jones, whose claim [was] rendered moot through satisfaction, prior to certifying the class, [could] be permitted to have the class certified, and proceed to represent that class, even though she no longer [had] a real interest in the right to be protected." Id. This Court answered that question in the affirmative and reversed the summary judgment, stating: "Notwithstanding the mootness of the suit as to Mary Jones, it is not moot as to other members ofthe class, and she can continue to litigate the issues as a representative of the class." Id. (emphasis added).
Gooden and Thomas's reliance on Jones, however, is misplaced. The problem in this case is not — as it was inJones — that the claims of the class representatives have become moot; it is that the claims of theentire putative class have become moot. They became moot, at the latest, by May 8, 2006, when the second amended complaint was filed. By that time, the attorney general had intervened and had sent a copy of his March 18, 2005, opinion with instructions to every board of registrars in the State; the secretary of state had promulgated the revised voter-registration forms; and Hunter had undisputedly discontinued her former practice of indiscriminately rejecting the applications of all convicted felons. Paragraph 7, which Gooden and Thomas concede afforded "precisely the relief [they had] requested," did not purport to extend relief beyond *Page 991 
that which had been accomplished by the actions of the defendants and the attorney general by May 8, 2006.[10] This relief extended, not only to Gooden and Thomas, but to all members of the putative class. The relief purportedly awarded in paragraph 7 affords nothing in addition to that which has been available to the parties and members of the putative class since May 8, 2006. Thus, it can be said that "the court's action on the merits would [not] affect the rights of the parties."Crawford, 153 S.W.3d at 501 (test for mootness).
In short, this case was moot long before August 23, 2006, when the trial court purported to certify classes and enter a summary judgment for the plaintiff class. "A moot case lacks justiciability." Crawford, 153 S.W.3d at 501. "`"Unless the trial court has before it a justiciable controversy, it lacks subject matter jurisdiction and any judgment entered by it is void ab initio."'" Sustainable Forests, L.L.C,805 So.2d at 683-84 (quoting Grenier, 782 So.2d at 272, quoting in turn Ex parte State ex rel. James,711 So.2d 952, 960 n. 2 (Ala. 1998)). Consequently, the trial court's purported class certification and summary judgment were void.[11]
 II. Attorney Fees
Finally, the defendants contend that the trial court's award of attorney fees was erroneous, because of, among other things, the mootness of the plaintiffs' claims. We agree.
Gooden and Thomas concede that, as a general rule, sovereign immunity as enshrined in Ala. Const.1901, § 14, bars an award of attorney fees against the State. Ex parte Town ofLowndesboro, 950 So.2d 1203 (Ala. 2006). However, sovereign immunity is no bar to such an award based on42 U.S.C. §§ 1983 and 1988. James v. Alabama Coalition for Equity,Inc., 713 So.2d 937 (Ala. 1997) (plurality opinion) (citingHutto v. Finney, 437 U.S. 678, 693-94, 98 S.Ct. 2565,57 L.Ed.2d 522 (1978)). Section 1988(b) provides, in pertinent part:
 "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318
[20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d
et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . ."
(Emphasis added.)
The question of whether a party is the "prevailing party" within the meaning of § 1988(b) is often a matter of contention. However, the following principles are well settled:
 "`[A] plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.' Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S.Ct. 566, 573, *Page 992 121 L.Ed.2d 494 (1992). In the context of an injunction, `a party "need not obtain relief identical to the relief [that it] specifically demanded, as long as the relief obtained is of the same general type."' Ensley Branch, N.A.AC.P. v. Seibels, 31 F.3d 1548, 1583 (11th Cir.1994) (quoting Ashley v. Atlantic Richfield Co., 794 F.2d 128, 131 (3d Cir.1986)). Nor does the plaintiff need to obtain relief to the extent demanded; getting something suffices to authorize an award of fees. See Farrar, 506 U.S. at 111, 113 S.Ct. at 573."
Dillard v. City of Greensboro, 213 F.3d 1347, 1353-54
(11th Cir.2000).
Moreover, "attorney's fees are available in cases `in which plaintiff prevails on a wholly statutory, non-civil-rights claimpendent to a substantial constitutional claim.'"Davis v. Everett, 443 So.2d 1232, 1235-36 (Ala. 1983) (quoting Maher v. Gagne, 448 U.S. 122, 132,100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)) (emphasis added). They are available `"where [the] Court enters judgment in favor of a plaintiff on [the pendent] state law claim,'" rather than on the federal civil-rights claim, "`as long as both claims arise out of a common nucleus of operative fact.'" Davis,443 So.2d at 1235 (quoting trial court's order). See alsoLowery v. Thomas, 575 So.2d 1030, 1032 (Ala. 1990) ("If the [federal civil-rights] claim and the state law claim arise out of a `common nucleus of operative fact,' then in determining the plaintiffs status as a `prevailing party' under § 1988 it is immaterial upon which claim or claims the judgment is based, unless the [federal] claim is specifically denied.").
However, the term "prevailing party" does not include "a party that has failed to secure a judgment on the merits or a court-ordered consent decree," even if the party has "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon Bd. Care Home, Inc. v. West Virginia Dep't of Health HumanRes., 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855
(2001) (emphasis added). "[F]or a party to be considered `prevailing,' there must be a `material alteration of the legal relationship of the parties,' . . . and there must be `judicialimprimatur on the change.'" Smith v. FitchburgPublic Schools, 401 F.3d 16, 22 (1st Cir.2005) (quotingBuckhannon, 532 U.S. at 604,121 S.Ct. 1835 (emphasis inBuckhannon)). Thus, it does not include a party whose claims have become moot before the entry of such a judgment or decree, resulting in a dismissal of the claims. SeeBuckhannon, 532 U.S. at 608-09, 121 S.Ct. 1835;Lewis v. Continental Bank Corp., 494 U.S. 472, 483,110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (a party is not a "`prevailing party' as it must be to recover fees under § 1988," even though the court of appeals holds in that party's favor, where the Supreme Court vacates the judgment of the court of appeals "on the basis of an event that mooted the controversy before the court of appeals' judgment issued"); Cramer v.Virginia Commonwealth Univ., 486 F.Supp. 187,192 n. 7 (E.D.Va.1980) ("a plaintiff cannot be a prevailing party where his claim is dismissed as moot").
Gooden and Thomas contend that they are entitled to attorney fees under count six of their second, third, and fourth amended complaints. Specifically, they state:
 "`[T]he plaintiffs' equal protection/due process claims under count six were not reached, with the court's ruling instead premised on its analysis of state constitutional rights. The claims of count six, and the due process analysis used in resolving the other, claims in the plaintiffs' favor, however, certainly suggest that at least to some extent, relief to the *Page 993 
plaintiffs could have been based on federal constitutional claims.'"
Gooden and Thomas's brief, at 70 (quoting the trial court's order). According to Gooden and Thomas, paragraph 7 was "justified by the federal due process clause." Gooden and Thomas's brief, at 54.
Gooden and Thomas's reliance on the federal claims in count six is unavailing. Those claims were asserted for the first time in the second amended complaint, which was filed on May 8, 2006. By that time, the case had become moot, as discussed previously in this opinion. In other words, it was moot, not only when the judgment was entered, but when the federal civil-rights claims were first asserted. Thus, in whatever respect the "legal relationship of the parties," and, in particular, the relationship between the defendants and Gooden before
May 8, 2006, may have been altered with "judicial imprimatur," they were clearly altered in the absence of any pendent federal claim upon which Gooden and Thomas rely. For these reasons, the trial court erred in awarding fees to the plaintiffs' attorneys.
 III. Summary
In summary, the trial court erred in awarding attorney fees, based on federal claims that were not asserted before the case was mooted by the voluntary acts of the attorney general, as intervenor, and the original defendants. Therefore, to the extent the trial court awarded attorney fees, its judgment is reversed. In all other respects, as explained in Part I of this opinion, the judgment of August 23, 2006, is void. A void judgment will not support an appeal. Gulf Beach Hotels Inc.v. State ex rel. Whetstone, 935 So.2d 1177, 1183
(Ala. 2006). Consequently, with the exception of the reversal of the award of attorney fees, this appeal must be dismissed.
REVERSED IN PART AND APPEAL DISMISSED IN PART.
COBB, C.J., and SEE, LYONS, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
[1] When this appeal was filed, Nancy Worley was the Secretary of State. Beth Chapman succeeded her in that office in January 2007. See Rule 43(b), Ala. R.App. P. ("When a public officer is a party to an appeal . . . in that officer's official capacity, and during its pendency dies, resigns, or otherwise ceases to hold office, the action shall not abate and the public officer's successor is automatically substituted as a party.").
[2] Section 17-4-124 authorized an appeal from the denial of registration. Act No. 2006-570 revised and reordered Title 17 of the Alabama Code 1975. The appeal provisions now appear in §17-3-55.
[3] The new forms were precleared by the United States Department of Justice on July 14, 2006.
[4] As discussed previously in this opinion, counts one and two alleged violations of § 177; count three involved the statutory appeal from the denial of registration; and count six alleged federal constitutional violations.
[5] As to those counts, Gooden and Thomas appealed, pursuant to § 17-4-124, the "refusal to register them to vote."
[6] Jones is not involved in this appeal.
[7] This construction of paragraph 7 mirrors the construction given it by Gooden and Thomas, who describe it as "providing declaratory and injunctive relief against Defendants' practice of disfranchising voters based on their conviction of any felony, without regard to whether the felony involved moral turpitude." Gooden and Thomas's brief, at 49.
[8] It also follows that the issues forming the basis of the relief in paragraphs 8-10 were not "in the case" for purposes of the application of Rule 54(c), Ala. R. Civ. P. SeeAmbrose, supra.
[9] According to Gooden and Thomas, "Thomas registered to vote just before the November 2006 election." Gooden and Thomas's brief, at 10.
[10] It follows that the joinder of Jones and Thomas by the first and fourth amended complaints, respectively, did not affect the mootness of the case. Their alleged causes of action differed in no material respect from that of Gooden, the original plaintiff, and it is not alleged that they suffered any deprivation after May 8, 2006.
[11] This conclusion obviates the need to discuss the implications, if any, of the mootness of Gooden's individual claims or the untimeliness of Thomas's claims with regard to their right to represent a plaintiff class.