The gist of this action involved a dispute between individuals over the ownership of a twenty acre tract of land.
The pre-trial order set forth the issues:
 "Nature of the Case. This is a property dispute between the Plaintiffs and the Defendants. By agreement of the parties the issues to be determined in this case are:
 "(a) The ownership of a tract of land described as follows:
 "All that part of the Southwest quarter of the Northeast quarter of Section 12, Township 3, Range 3, lying Southwest of Dry Creek as now established containing twenty acres, more or less in Jackson County, Alabama.
* * * * * *
 "Position of the Parties. (a) The Plaintiff contends that he is the owner of the land described in Paragraph 2 (a) by virtue of the fact that he and his predecessors in title have adversely possessed the land since 1928 and that he and his predecessors in title have paid taxes exclusively on this property since 1928 except that the Defendant has paid taxes since 1971. Plaintiff further claims title to the property by virtue of a deed from Nancy Davis Carden and husband, Robert Carden, dated May 20, 1970, and recorded in Deed Book 228, at page 356 in the Probate Office of Jackson County, Alabama.
* * * * * *
 "(b) Defendants contend that they are the owners of the tract of land described in Paragraph 2 (a) by virtue of adverse possession of themselves and their predecessors in title, and by virtue of a deed from the heirs of Winston T. Smith and Arthur E. Robertson dated February 20, 1970, and recorded in Deed Book 227, at page 322 in the Probate Office of Jackson County, Alabama."
The trial court saw and heard the witnesses, and decreed that the Cardens (plaintiffs) had adversely possessed the tract. Appellant, Penney (defendant below) argues that Carden alleged, but did not prove, that he was in peaceable possession; therefore, says Penney, the court was ousted of jurisdiction because the statutory proceeding in rem to quiet title (now §6-6-560, Code, 1975) requires allegation and proof that the claimant "is in the actual, peaceable possession of the land." We disagree. A quiet title action will lie in two fundamental situations, one is where the complainant is in the actual peaceable possession of the property, and the other is whether no one is in the actual possession of the property. Dennison v.Claiborne, 289 Ala. 69, 265 So.2d 853 (1972), which quotes fromFitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965).
The pre-trial order, "which control[s] the subsequent course of the action," stated that the issue involved was the ownership of the disputed tract. The evidence introduced on the issues set out in the pre-trial order was sufficient to give the court jurisdiction to enter the decree in this cause. Cf.Chestang v. Tensaw Land Timber Co., 273 Ala. 8, 134 So.2d 159
(1961).
Appellant claims that the trial court lacked jurisdiction because "the evidence is without dispute that W.E. Penney had been in the actual possession of the property since immediately after he purchased it in 1969, and continuing up until the trial (1977)." If the evidence were uncontradicted that Penney was in actual possession as he claims, it is true that title to land cannot be quieted in one out of possession when another is in possession. Dennison v. Claiborne, supra. Here, however, the evidence of actual possession was disputed.
Assuming, however, that the evidence was undisputed that Penney did have actual possession of the tract, should the decree of the trial court be reversed? No. One of the issues set out in the pre-trial order, which controlled the subsequent course of the proceeding, concerned the ownership of the disputed tract. The spirit of the new Rules of Procedure is that they should be construed to assure the just, speedy and inexpensive determination of every action. Furthermore, as we will discuss in part II *Page 1190 
of this opinion, Rule 54 (c) provides that in non-default judgments, the trial court should grant the relief to which a party in whose favor it is rendered is entitled, even if the party has not demanded that relief in his pleadings. In this case, the court, acting pursuant to the pre-trial order, could fashion a decree as if the suit had been begun as an action to quiet title, but was tried as an action in ejectment.
Therefore, the judgment of the trial court which determines the ownership of the land is due to be affirmed.
 PART II
Appellant contends that the trial court erred in failing to make an award of compensation to him for improvements made on the subject property. He admits that the pleadings do not claim this compensation, but he insists that he is entitled to recover it under his prayer for general relief in his cross-complaint. He also claims that the testimony of Carden that the land was substantially enhanced in value by reason of the improvements, is sufficient in and of itself to entitle him to compensation. It is undisputed that the trial of the case was well under way before the issue of compensation to Penney arose. The following transpired during cross-examination of appellee Carden:
 "Q Do you have a judgment about what the value of this disputed property was before Bill Penny (sic) did any work on it?
 "MR. PROCTOR: Object; I don't see the materiality of that.
 "THE COURT: What was the purpose of that, Mr. McGinty?
 "MR. MC GINTY: Judge, we think that it's important for the Court to know the value of the property.
"THE COURT: Why?
"MR. MC GINTY: Because Mr. Penny (sic) improved it.
 "THE COURT: That has got nothing to do with whether he owns it or not.
"MR. MC GINTY: We except.
 "THE COURT: You can prove what he's done on it as tending to establish his possession, if it's done within a time that would be material; buy I don't see how what he spent or what the property if worth would have anything to do with it; sustained.
 "MR. MC GINTY: Judge, we feel that it would be important; if the Court should rule that it was work done on Mr. Carden's property, then he would be unjustly enriched by the improvements that were done.
 "THE COURT: If I gave, decided Carden owned the property, then Mr. Penny (sic) would be entitled to some sort of compensation for the improvements on it. I don't recall that being anywhere in the pleadings.
 "MR. LITTLE: Judge, I think it would be included in the general prayer of relief.
 "MR. PROCTOR: He knew it was in dispute ever since he bought it. Any improvements would be at his own risk.
 "THE COURT: I will overrule it for the time being. I did not realize that there was, that was within the purview of the pleadings at all; but if you say it is, we'll see.
"MR. LITTLE: It's not in those words, Judge.
* * * * * *
 "Q What, in your judgment, is that property worth, was that property worth immediately after Mr. Penny (sic) did his clearing and cleaning and sowing it down in pasture and putting the fences around it, and so forth?
 "A Well, most of that land, from clearing and cleaning up across the creek there from it, I have done some; and at that time, it would cost about $165.00 an acre.
"Q To clear it up?
"A To clear it and sow it.
 "Q What would you say that the value of that land was immediately after he got through the work he did out there on it?
"A About $165.00 an acre more.
"Q More?
"A (Witness nods in the affirmative.)" *Page 1191 
Appellant chiefly relies on the provisions of Rule 54 (c), A.R.C.P., which provides, in part:
 "* * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."
The quoted portion of Rule 54 (c) applies not only to claimants, but to defending parties as well. 6 Moore's Federal Practice ¶ 54.62, p. 1271.
The Cardens primarily attack Penney's claim for damages here on appeal as coming too late. They say that Penney should have insisted on the claim as an issue in the pre-trial order, or should have moved to amend his pleadings, and, at least, should have given the trial court, in a post-judgment motion, an opportunity to rule on the matter. Admittedly, the Cardens state what constitutes the better practice, but the question remains whether Penney, having failed to take these steps, is now precluded from attacking the judgment. Construing Rule 54 (c) liberally, we hold that he is not. At the time the evidence was presented, Penney's counsel advised the trial court of the purpose of the testimony on improvements, and that the relief requested could be given under Penney's general prayer for relief.
The situation here is somewhat similar, factually, to a set of circumstances in Sapp v. Renfroe, 511 F.2d 172 (1975).
There, Sapp's complaint did not contain a demand for money damages, except for such "further relief as is just and proper." Sapp, however, in response to a Board of Education's motion to dismiss the appeal, asserted in the appellate court that he was entitled to money damages. The Fifth Circuit, in a footnote, stated that Rule 54 (c) of the Federal Rules of Civil Procedure had been construed liberally and under it a demand for relief in the pleadings did not limit, except in cases of default, the relief a court could grant when entering judgment.
In Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362,45 L.Ed.2d 280 (1975), in a class suit under Title VII of the Civil Rights Act, the claimant's request for backpay was filed nearly five years after the institution of the action. The backpay claim was not prayed for in the pleadings. A Federal District Court denied the backpay claim, using the tardiness of the filing and the lack of a prayer for relief in the pleadings as grounds for its denial. The Supreme Court of the United States held:
 "It is true that Title VII contains no legal bar to raising backpay claims after the complaint for injunctive relief has been filed, or indeed after a trial on that complaint has been had. Furthermore, Fed. Rule Civ.Proc. 54 (c) directs that
 `every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.'
 But a party may not be `entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party. The respondents here were not merely tardy, but also inconsistent, in demanding backpay. To deny backpay because a particular cause has been prosecuted in an eccentric fashion, prejudicial to the other party, does not offend the broad purposes of Title VII. This is not to say,
 however, that the District Court's ruling was necessarily correct. Whether the petitioners were in fact prejudiced, and whether the respondents' trial conduct was excusable, are questions that will be open to review by the Court of Appeals, if the District Court, on remand, decides again to decline to make any award of backpay. . . ."
In Robinson v. Lorillard Corporation, 444 F.2d 791 (1971), the court applied Rule 54 (c), as follows:
 "The complaint filed by the plaintiffs in the District Court did not specifically request an award of back pay, though it did request `such other additional relief as may appear to the Court to be equitable and just.' At a pretrial hearing *Page 1192 
concerning the appropriateness of a class action, one of the lawyers for the plaintiffs clearly indicated that the suit was one for injunctive relief rather than recovery of lost wages. It was not until well after trial of the case, though before the judge had entered a decision, that a request was made for additional relief in the form of back pay for the class. Defendants argue that these facts constitute an effective renunciation and waiver of any right to receive an award of back pay.
 "The starting point for resolution of this issue is Rule 54 (c) of the Federal Rules of Civil Procedure which provides:
 "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.
(Emphasis added.)
 This provision has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the basis of the facts proved. The pleadings serve only as a rough guide to the nature of the case.
 "There are only two limiting principles to the general rule which might avail the defendants. The first is that a remedy desired by none of the parties should not be forced upon them. Mercury Oil Refining Co. v. Oil Workers Int'l Union, 187 F.2d 980, 983 (10th Cir. 1951); International Nikoh Corp. v. H.K. Porter Co., 358 F.2d 284, 290 (7th Cir. 1966) (dictum). But that is not our case. Although the plaintiffs initially indicated that they were not seeking back pay, prior to the entry of judgment they added a request that back pay be awarded the class.
 Clearly it was not forced upon them against their will.
 "The one other limiting principle which might assist defendants' case is expressed in the following manner by Rental Development Corporation of America v. Lavery, 304 F.2d 839, 842 (9th Cir. 1962):
 "If, however, it is made to appear that the failure to ask for particular relief substantially prejudiced the opposing party, Rule 54 (c) does not sanction the granting of relief not prayed for in the pleadings.
 In our case, because the obligation to provide back pay stems from the same source as the obligation to reform the seniority system, any general defenses relevant to the back pay award were equally relevant to the suit for injunctive relief. Any specific defenses related only to computation of back pay may be raised during the process of assessing individual back pay claims, possibly before a special master. The defendants have in no way been prejudiced by the belated claim."
We do not interpret the trial court's decree as making a determination on Penney's claim for compensation. Therefore, we reverse the judgment insofar as it relates to this claim for compensation, and remand the cause to the trial court with directions to make a determination whether Penney is "entitled" to a judgment, under the particular facts already proved. In determining whether Penney is "entitled" to a judgment on his claim for compensation, the court may consider whether the failure by Penney to ask for the compensation by pleading and prayer substantially prejudiced the Cardens. Albemarle, supra.
The trial court is directed to make specific findings to support its determination whether Penney is or is not "entitled" to a judgment under Rule 54 (c), in order that either party, if aggrieved, may appeal the determination. The standard of review on any appeal would be the familiar one, whether the findings made by the trial court were clearly and palpably wrong. See Albemarle, supra.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 1193