The issues here are: (1) whether the trial court erred under the terms of Rule 54 (c), ARCP, by granting relief to the defendants not requested by their pleadings; and (2) whether a conveyance found to be fraudulent as to a creditor, nevertheless could stand as security for the value actually paid by a grantee found to have had no knowledge of the fraud. We answer (1) no, and (2) yes, and affirm.
The parties in this case are Central Bank of Alabama, N.A., plaintiff-appellant, Alfred Paul Ambrose and his daughter Paulette, defendants-appellees. Central Bank sought to have a conveyance by Alfred Paul Ambrose and his now deceased wife, Osteen B. Ambrose, to their daughter, Paulette, declared void and set aside as fraudulent under Code 1975, § 8-9-6.
The facts indicate that on March 8, 1972, Mr. and Mrs. Ambrose purchased the house and property in issue and conveyed it on July 13, 1978, to their daughter, Paulette. *Page 1204 
At the trial on April 19, 1981, it was stipulated between Central Bank, Mr. Ambrose, and Paulette Ambrose, that at the time of the conveyance in 1978, Mr. and Mrs. Ambrose were indebted to Central Bank and the indebtedness was subsequently reduced to a judgment by the circuit court of DeKalb County on February 22, 1980, in the amount of $21,426.65. Further, it was stipulated that at the time of the 1978 conveyance, the value of the property was approximately $23,000 and the approximate pay-off of the existing mortgage was $8,500. Mrs. Ambrose died following the conveyance to Paulette, but prior to the filing of this suit.
Mr. Ambrose and Paulette Ambrose denied that the conveyance was made with intent to hinder, delay or defraud Central Bank. Mr. Ambrose testified, over Central Bank's objection, that by agreement with his minor daughter in 1972, he withdrew $1,079 from her guardianship account which was used as a portion of the down payment on the real estate in issue. Mr. Ambrose also testified that he paid for improvements totaling $4,000 which were made to the house in 1974 and 1975. Sometime around January 20, 1978, when Paulette was twenty years of age, her guardianship account was closed, and Mr. Ambrose testified that Paulette endorsed and delivered to him the funds in the account to reimburse him for the improvements made to the property. The savings account passbook, which was admitted over the bank's objection, indicated a withdrawal of $1,079 on March 30, 1972, twenty-two days after the property was originally purchased by Mr. and Mrs. Ambrose. The passbook likewise indicated a withdrawal of $3,884.57 on January 20, 1978, seventeen months after Paulette attained the age of majority. The evidence showed that Mr. and Mrs. Ambrose and Paulette lived in the house from the time it was purchased until Mrs. Ambrose's death and that Mr. Ambrose and Paulette were both still occupying the house at the time of the trial. Paulette testified that she made four or five mortgage payments prior to the conveyance to her and that she assumed the mortgage, and made all the payments on the mortgage debt following the conveyance to her. Both Mr. Ambrose and Paulette testified that at the time of the conveyance it was agreed between Paulette and Mr. and Mrs. Ambrose that Mr. and Mrs. Ambrose could live in the house for the rest of their lives.
The case was tried without a jury and a judgment was rendered on January 15, 1982. Among the trial court's findings were the following: that at the time of the conveyance the grantors were badly in debt; that at least a portion of the motivation for conveying the property was to save the home of the parties from debts then owed and anticipated; that the grantors did have a fraudulent intent to hinder or delay existing creditors; and that the consideration for the conveyance was substantially inadequate. The trial court further found that there was no fraudulent intent on the part of Paulette and that she had no knowledge of facts which, upon inquiry, would have led her to discover a fraudulent intent with regard to the conveyance.
The trial court, in setting aside the conveyance, ordered that the mortgagee had paramount claim to the property to satisfy its mortgage and that the property would stand as security for the following debts, obligations and claims of Paulette Ambrose:
 "(1) $1,079 together with interest at the legal rate from March 30, 1972;
 "(2) $3,884, with interest at the legal rate from January 30, 1978, withdrawn from her guardian's account and used to pay for improvements to subject property;
 "(3) Homestead rights in the amount of $2,000, which grantor, Osteen B. Ambrose, conveyed to her;
 "(4) Mortgage payments on the first mortgage made by defendant, Paulette Ambrose, since the execution of said deed on July 13, 1978, to date; such payments being in the amount of $132 each month, as well as future mortgage payments that may be made by her together with interest at the legal rate thereon from the time such mortgage payments have been or will be made by her." *Page 1205 
The trial court likewise ruled that Mr. Ambrose had the right to claim a homestead exemption of $2,000, the amount of the homestead exemption at the time Mr. Ambrose originally conveyed his homestead right to her. The trial court finally ordered that Central Bank was entitled to enforce its judgment against the remaining interest of Mr. Ambrose after all the above claims had been satisfied. Central Bank appealed.
The issue, as raised by Central Bank, is whether the trial court erred in granting relief to Paulette Ambrose when that relief was never requested by the pleadings and when the granting of such relief is, as Central Bank alleges, highly prejudicial. In its brief, Central Bank makes the following assertions:
 "In this case the evidence admitted concerning the passbook withdrawals and the guardianship was admitted to sustain the defense of an express trust. It is doubtful that the defendant, Paulette Ambrose, ever thought of attempting to recover such sums from her father. It was never stated in the pleadings and never elicited in the testimony that this alleged debt was consideration for the conveyance by the Ambroses to their daughter. The plaintiff never had an opportunity to challenge the testimony concerning the alleged improvements or the misappropriation of guardianship funds as [sic] until the judgment was rendered it was not appraised [sic] of the fact that it needed to defend such a cross-claim. . . .
 "Had the plaintiff been aware of a cross-claim by Paulette it certainly could have been prepared to challenge or defend against the vague recollections of the parties from ten years previously concerning the application of funds which required court approval, none of which were documented in this trial. . . .
 "The plaintiff was further prejudiced in not having sufficient notice of a cross-claim in that there are probable defenses which could be raised such as the statute of frauds and the statute of limitations. From the testimony Paulette Ambrose attained majority on August 14, 1976, and the statute of limitations as to her `claims' has probably run, although this was never raised by the plaintiff which never knew it was defending such implied claims."
Rule 54 (c), ARCP, provides in pertinent portion that ". . ., every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." We are of the opinion that the following analysis of Rule 54 (c) by the Alabama Court of Civil Appeals in Carden v. Penney,362 So.2d 266 (Ala.Civ.App. 1978), is applicable to the facts under review here:
 "Under the provisions of Rule 54 (c) of the Alabama Rules of Civil Procedure it is the duty of the court to grant relief to which a party is entitled irrespective of the request for relief contained in the pleadings. Penney v. Carden, [356 So.2d 1188
(1978)]. See 6 Moore's Federal Practice § 54.62 (1976). However, Rule 54 (c) does not sanction the granting of relief not requested in the pleadings where it appears that a party's failure to ask for particular relief has substantially prejudiced the opposing party. Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); Rental Development Corporation of America v. Lavery, 304 F.2d 839 (9th Cir. 1962); Penney v. Carden, supra. Moreover, if the relief granted pursuant to Rule 54 (c) is not justified by the proof or is justified by proof which the opposing party has not had an opportunity to challenge, the relief granted should not be sustained on appeal. See 10 Wright 
Miller, Federal Practice and Procedure § 2662 (1973). Accordingly, logic dictates that in those situations where an opposing party has no notice, by pleadings or otherwise, regarding the claim upon which relief is granted by means of Rule 54 (c) and is thereby denied an opportunity to have challenged or defended against such a claim, the opposing party has suffered substantial prejudice and the judgment granting relief must be reversed. See United States v. Hardy, 368 F.2d 191 *Page 1206 
(10th Cir. 1966). Indeed, such a rule is fundamental to the essentials of due process and fair play. Sylvan Beach, Inc. v. Koch, 140 F.2d 852 (8th Cir. 1944)."
362 So.2d at 268-269.
The case of Williams v. Schaeffer, 260 Ala. 16, 68 So.2d 551
(1953), is cited by the appellees for the proposition that a cross-claim was unnecessary under the facts of this case because they were nonetheless entitled to the same relief under their answer. In their answer, defendants averred, among other things, the following:
 "By way of defense the defendants insisted that there was an oral express trust entered into between the defendant, Paulette Ambrose, and her parents, as trustees, when Paulette was fourteen or fifteen years of age, such trust having been established by telephone conversation with Paulette's Florida lawyer."
The appellees further averred that the $21,426.65 judgment obtained by Central Bank was void and illegal, and denied Central Bank's allegation that the conveyance of the house and property was consummated to delay, hinder or defraud creditors. We cannot hold that the answer was sufficient to support the relief the trial court gave. In Carden v. Penney, supra, the Court of Civil Appeals quotes from the case of Sylvan Beach,Inc. v. Koch, 140 F.2d 852 (8th Cir. 1944), regarding the philosophy and scope of Rule 54 (c), and we think it instructive to use the same quote here:
 "A court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings. . . . Unless all parties in interest are in court and have voluntarily litigated some issue not within the pleadings, the court can consider only the issues made by the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded.
"* * *
 "The foregoing rules are all fundamental and state nothing more than the essentials of due process and of fair play. They assure to every person his day in court before judgment is pronounced against him." (Emphasis added.)
140 F.2d at 861, 862.
We have examined the record to determine if the relief given by the trial court is based upon claims voluntarily litigated by the parties, even though the relief given was not demanded by any pleading.
The only reference to the relief granted was made by the trial judge after the parties had rested:
 "THE COURT: The Court will take the matter under advisement, and the parties may submit any memorandums of law that they would care to on the matter. The Court will be glad to have help on the law with reference to the case. Several matters come to mind . . . several things come to mind to the Court on the question, and one is the question of homestead exemption and the other one is the question of payment . . . preferred payment of a debt. Even though the Court might not find, for instance, that . . . might find that there was an intent to save the property from claims of existing and subsequent creditors, there'd still be a question of the right of the parties to convey their homestead and the right of the parties to prefer payment of debts. I don't know . . . I guess that's in the case whether it's specially pleaded or not . . . it might not be in the case because it's [sic] specially pleaded, but if I remember the law correctly on preference . . . you have a right to prefer creditors, and that's not against the law in any way to prefer a particular creditor, and, of course, the debt could've been created whether the trust was or not. I point that out to the parties. You have a question of homestead. The parties have a right to convey homestead, but I don't know whether the provisions of the mortgage in question would cover homestead on property that wasn't included in the mortgage. I don't know the answer to that question. So you have the questions of homestead and preference of debts in the case, in addition to the question of the result of the alleged trust. I mention *Page 1207 
those in passing. I'll be glad to have any help any of the parties want to give me on those or any other questions that come up under the evidence in the case. I mention those in passing. It occurred to the Court, so I tell the parties what occurred to the Court."
Neither party, insofar as the record shows, made any statement regarding the trial judge's comment: "So you have the questions of homestead and preference of debts in the case, in addition to the question of the result of the alleged trust." Central Bank raised no objection that the questions mentioned by the trial judge were not in the case. On the other hand, the defendants did not request an opportunity to amend their pleadings to demand the relief which the trial judge mentioned. Consequently, we hold that the issues which the trial judge stated were in the case, and upon which he requested memorandums of the law, were sufficiently presented so as to authorize an entry of a judgment, pursuant to Rule 54 (c), ARCP.
The bank argues that, even assuming the trial court could grant Paulette Ambrose relief, and even though the trial court found that Paulette Ambrose was not guilty of any fraudulent intent in the transaction, the trial court erred in granting her relief, because she was guilty of constructive fraud, as a matter of law. The bank cites J.C. Jacobs Banking Co. v.Campbell, 406 So.2d 834 (Ala. 1981), wherein this Court did hold that "[a] valuable but substantially inadequate consideration, however, is also part of constructive fraud; the mutual fraudulent intent of the parties is inferred by law from the great disparity between the real value and the consideration given."
The trial court stated that "[a]s to defendant-daughter-grantee, the Court does not find any fraudulent intent on her part." In view of this finding, we hold the following principle of the J.C. Jacobs Banking Co.
case to be applicable:
 "Generally, inadequacy of consideration is only a `badge' or indicium of fraud. Where, however, the consideration is substantially or grossly inadequate, fraud may be inferred as a matter of law from inadequacy alone. Therefore, when the consideration, though valuable, is found to be substantially inadequate, and the grantee is without knowledge of the grantor's intent or of facts putting him on inquiry as to that intent, the conveyance will be allowed to stand only as security for the value actually paid. London v. G.L. Anderson Brass Works, [197 Ala. 16, 72 So. 359 (1916)] and cases cited therein; Morrison v. Federal Land Bank of New Orleans, [232 Ala. 138, 167 So. 288 (1936]." (Emphasis supplied.)
This is an equitable principle which the trial court was authorized to apply in this case in view of the evidence presented.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.