THOMPSON, Presiding Judge.
Jeanette Wicks (“Jeanette”) appeals from the judgment of the Colbert Circuit Court that, among other things, ordered her to sell her interest in certain real property to Jeffrey Robert Wicks II (“Jay”). For the reasons stated herein, we reverse.
Jay filed an action against his father, Jeffrey R. Wicks (“Jeff’), and his stepmother, Jeanette, on December 23, 2008, styling his complaint a “petition for declaratory judgment.” In his complaint, Jay alleged that Jeff and Jeanette were currently involved in a divorce action and that an issue had arisen regarding a parcel of real property located in Sheffield (“the property”). Jay alleged that his paternal grandparents, who are deceased, had owned the property and that, through estate proceedings, the property had been granted to his father and his uncle, Ronald E. Wicks (“Ronald”), who were the only heirs of his paternal grandparents. Jay asserted that conflicting deeds regarding the property had been recorded and that one of the deeds vested him with ownership of the property while one of the deeds vested Jeff and Jeanette with ownership of the property. Jay alleged that he had paid the taxes and insurance on the property since 2005 and that, because the house on the property had been uninhabitable, he had spent a substantial amount of money to renovate it. He asserted that Jeff and Jeanette had not paid the taxes or the cost of insurance for the property and that they had not contributed to the maintenance and improvements on the property. Jay asserted that he was the owner of the property, and he asked the court “to render a declaratory judgment adjudging and granting” the property to him.
On September 9, 2009, the trial court held a bench trial. At the trial, several deeds were submitted into evidence. The first deed introduced was executed on August 1, 2005, and recorded on September 12, 2005. By that deed, Ronald and Jeff conveyed ownership of the property to Jeff and Jeanette as joint tenants with right of survivorship. A second deed, which was executed on September 14, 2005, and recorded later that day, was introduced into evidence. By that deed, Jeff purported to convey the property to Jay. The deed does not list Jeanette as a grantor, and she did not execute that deed. A third deed, which was identical to the first deed, was introduced. It also was executed on September 14, 2005, and was recorded later that day.
At the trial, Ronald testified that the property had originally belonged to Edward Wicks and Evelyn Wicks, who were Jeffs and Ronald’s parents. Ronald testified that Evelyn Wicks had died in 1989 and that Edward Wicks had died in 2004. Ronald stated that he had been the executor of Edward Wicks’s estate and that Jeff and he were Edward Wicks’s sole heirs. Ronald testified that, at Edward Wicks’s death, Edward Wicks had owned the prop *90 erty and an automobile. Ronald stated that Jeff and Ronald had agreed that Ronald would receive the automobile and that Jeff would receive the property with the intent to give the property to Jay. Ronald testified that the automobile was worth between $10,000 and $12,000 and that the house on the property was in poor condition. He stated that he believed that the automobile and the property had had comparable values, although he stated that his opinion as to the value of the house was speculation.
Jay testified that he and Josh Wicks, Jay’s younger brother (“Josh”), began living in the house on the property in 2004, while their paternal grandfather’s estate was being probated. Jay testified that Josh, Jeff, and he did a substantial amount of work to the house, including, among other things, replacing the roof, replacing the central-air-conditioning unit, and replacing the kitchen and bathroom floors. He testified that the total cost of all the improvements to the property was $38,083. Jay stated that he received a letter dated April 9, 2008, during the time that Jeff and Jeanette were going through a divorce, indicting that Jeanette planned to move into the house on the property on April 15, 2008. Jay testified that this was the first notice he had that Jeanette claimed an interest in the property, and he stated that, had he known that Jeanette had claimed an interest in the property, he would not have made all the improvements to the property that he had made. Jay testified that he had paid all the property taxes for the property in 2006, 2007, and 2008 for the tax years 2005 to 2007. This testimony was supported by tax records entered into evidence showing that the property was assessed in Jay’s name. Jay testified that the property was insured in his name and that he had paid the premium for the property insurance beginning in 2005. Jay stated that Jeanette had never offered to pay the property insurance or property taxes on the property and that she had not paid for any of the improvements that he had made to the property.
Jeanette testified that she and Jeff were married in October 2004. She testified that she had helped with the improvements on the property by cleaning and painting and that some of the improvements, such as the new roof and the new central-air-conditioning unit, had been paid for out of a bank account that Jeff and she had held jointly. Jeanette stated that Jeffs and her intention had been to allow Jay and his younger brother to live on the property and that, once they moved off of the property, she and Jeff were going to sell it. She testified that she paid the taxes on the property for 2004 or 2005. She also stated that she and Jeff were paying for the property insurance on the property when they were married in 2004.
Jeff testified that it had been Ronald’s and his intention that Ronald’s daughter receive their father’s automobile and that Jay receive the property. He stated that he believed that the automobile and the property were approximately equal in value. He testified that Jeanette did not pay for any of the improvements to the property as she had testified. Jeff testified that it had been his intention that Jay would own the property.
After the trial, Jeanette filed a brief in which she argued that the evidence at trial demonstrated that she owned a one-half interest in the property as a tenant in common with Jay. She asserted that Jeff and Ronald had taken ownership of the property as tenants in common and that the August 1, 2005, deed conveyed title to Jeff and her as joint tenants with right of survivorship, each owning an undivided, one-half interest in the property. She as *91 serted that the effect of the September 14, 2005, deed of the property from Jeff to Jay served to convey Jeffs one-half interest in the property to Jay, destroying the surviv-orship rights and causing Jay and her to become tenants in common of the property. She argued that the third deed, which was identical to the first deed, was invalid because, at the time it was recorded, neither Jeff nor Ronald had any legal interest remaining in the property. As to the testimony at trial regarding improvements that had been made to the property, Jeanette argued that the issue of reimbursement among cotenants was not an issue that was before the court and that, instead, the only issue before the court was the request for relief in Jay’s complaint, i.e., a declaration of the parties’ respective rights in the property. She argued that “each tenant in common has the right to petition the court for sale or division of the property” and that, “when an action for partition is filed and/or upon further request of the Court,” she would file a brief addressing those issues.
Jay also filed a brief after the trial. He stated that, by virtue of the deeds, “the parties are cotenants of the property.” He argued that the property presently was worth substantially more than it had been worth in 2005 and that, “[i]f any money is due to be exchanged between the parties as cotenants then [he] is due to be reimbursed for the sums expended for taxes, insurance, and improvements made under the mistaken belief that he was the sole bona fide owner.” He stated that “[t]he only relief that is equitable in this situation is for the Court to order sole possession of the property to [him] and to remove any cloud on [his] title by divesting [Jeanette] of any interest she has in the property.”[1]
On December 29, 2009, the trial court entered a final judgment in which it found that Jeanette and Jay were tenants in common of the property, each owning a one-half interest therein. It found that Jay had paid for all the improvements to the property since 2005, that Jay had paid property taxes and insurance on the property in the amount of $3,550.09, and that Jeanette had not contributed to the improvements or to payment of the property taxes and insurance on the property. The trial court found that the value of the property as of September 2005 was $15,000. Based on those findings, it ordered:
“1. [Jay] shall retain sole possession and ownership of the property....
“2. [Jeanette] shall give [Jay] a quit claim deed to said property.
“3. [Jay] shall pay [Jeanette] the amount of $5,724.95, for her one-half interest in said property less one-half of the taxes and insurance paid on said property since 2005, upon receipt of the quit claim deed.”
Jeanette filed a postjudgment motion, after which the trial court entered an amended order clarifying that the total amount due to her from Jay was $5,724.95, which the trial court had calculated by deducting half of the taxes and property insurance Jay had paid for the property from the $7,500 value of Jeanette’s one-half interest in the property. Jeanette filed a timely appeal.
Because the trial court’s decision is based on ore tenus evidence, we will presume that its factual findings are correct, and we will not set them aside unless they are plainly and palpably wrong or unjust. See Tyler v. Tyler, 990 So.2d 423, 428 *92 (Ala.Civ.App.2008). We do not extend this presumption of correctness to the trial court’s application of the law to the facts, however. See Hinds v. Hinds, 887 So.2d 267, 271 (Ala.Civ.App.2003). Instead, we review a trial court’s application of the law to the facts de novo. See Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1255-56 (Ala.2004).
Jeanette contends that the trial court erred by granting relief to Jay that he did not request in his complaint. Specifically, she argues that, in his complaint, Jay sought only a declaration as to the parties’ ownership interests in the property and that the trial court, in addition to making the determination requested, improperly went further and divided the parties’ interests in the property. We agree.
In Chapman v. Gooden, 974 So.2d 972 (Ala.2007), our supreme court stated:
“We first address the defendants’ contention that the trial court erred in ordering relief in paragraphs 8-10 of its order based on an issue never joined by the parties, namely, the constitutionality of § 177(b)[, Ala. Const. 1901]. We recognize the rule that a ‘final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party’s pleadings.’ Ala. R. Civ. P. 54(c). However, the rule has its limits:
“‘A court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings.... Unless all parties in interest are in court and have voluntarily litigated some issue not within the pleadings, the court can consider only the issues made by the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded.
[[Image here]]
“ ‘The foregoing rules are all fundamental and state nothing more than the essentials of due process and of fair play. They assure to every perr son his day in court before judgment is pronounced against him.’
“Central Bank of Alabama, N.A. v. Ambrose, 435 So.2d 1203, 1206 (Ala.1983) (quoting Sylvan Beach, Inc. v. Koch, 140 F.2d 852, 861-62 (8th Cir.1944)). The question thus resolves itself to whether the relief given by the trial court is based upon issues that ‘were in the case.’ 435 So.2d at 1207 (emphasis added).”
974 So.2d at 984-85. See also Price v. Price, 442 So.2d 121, 122-23 (Ala.Civ.App.1983) (“ ‘[I]f the relief granted pursuant to Rule 54(c) is not justified by the proof or is justified by proof which the opposing party has not had an opportunity to challenge, the relief granted should not be sustained on appeal.’ ” (quoting Carden v. Penney, 362 So.2d 266, 269 (Ala.Civ.App.1978))).
The effect of the trial court’s judgment in the present case was to declare that Jay and Jeanette were tenants in common of the property, to partition the property, and to require Jeanette to sell her interest in the property to Jay.[2] Section 35-6-100 et seq., Ala.Code 1975, provides the statutory basis for allowing a tenant in common to purchase the interests of the other tenants in common as was ordered by the trial court in this case. Section 35-6-100 provides:
“Upon the filing of any petition for a sale for division of any property, real or *93 personal, held by joint owners or tenants in common, the court shall provide for the purchase of the interests of the joint owners or tenants in common filing for the petition or any others named therein who agree to the sale by the other joint owners or tenants in common or any one of them. Provided that the joint owners or tenants in common interested in purchasing such interests shall notify the court of same not later than 10 days prior to the date set for trial of the case and shall be allowed to purchase whether default has been entered against them or not.”
If the tenants in common are not able to agree on a price, “the value of the interest or interests to be sold shall be determined by one or more competent real estate appraisers or commissioners, as the court shall approve, appointed for such purpose by the court,” and the appraisers are to make a report to the court of the value of the interest or interests to be purchased. § 35-6-101. The cotenant purchasing the other cotenants’ interest must pay the determined amount into court, and, upon so doing, the clerk is to issue an instrument transferring the purchased interest to the purchasing cotenant. § 35-6-102.
In the present case, Jay styled his complaint a “petition for declaratory judgment,” and, for all that appears in the complaint, he sought only a declaration as to the parties’ rights in the property. There is nothing in his complaint indicating that he sought to have the trial court partition the property and order Jeanette to sell to him her interest in the property. Jay did not give notice 10 days before the trial, as required by § 35-6-100, that he was interested in purchasing Jeanette’s interest in the property. Although some of the evidence adduced at trial focused on the value of the property and the value of the improvements that had been made to the property, we conclude, after a review of the transcript of the trial, that the testimony provided was not sufficient to place Jeanette on notice that the trial court might require her to sell her interest in the property to Jay, and we further conclude that the evidence was not sufficient to support the trial court’s judgment awarding Jay such relief, given the clear lack of notice required by § 35-6-100 and the absence of a valuation of the property by an appraiser or commissioner as required by § 35-6-101.
We hold, based on the pleadings and the evidence presented, that Jeanette did not voluntarily litigate, implicitly or otherwise, the issue whether she should be required to sell her interest in the property to Jay. Thus, Rule 54(c), Ala. R. Civ. P., which generally provides that the final judgment “shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party’s pleadings,” did not permit the trial court in this case to “ ‘enter a judgment which goes beyond the claim asserted in the pleadings,’ ” i.e., Jay’s claim for a declaration of the parties’ rights in the property. Chapman, 974 So.2d at 984. The trial court, having resolved the issue set forth in Jay’s complaint by determining that the effect of the various deeds was to create a tenancy in common in the property between Jay and Jeanette, was not permitted to afford the parties additional relief.
In addition to relying on Rule 54(c), which, as noted above, does not support the challenged aspect of the trial court’s judgment, Jay argues that the trial court’s order that Jeanette sell her interest in the property to him is supported by § 6-6-230, Ala.Code 1975, which provides that “[fjurther relief based on a declaratory judgment may be granted whenever necessary or proper.” We do not read that *94 section as granting a trial court the power, after entering a declaratory judgment, to enter additional relief that was not requested in the pleadings, that was not litigated by the parties, and that is not supported by the evidence. Thus, Jay’s argument in this regard is without merit.
For the foregoing reasons, we conclude that the trial court erred when it ordered Jeanette to sell her undivided, one-half interest in the property to Jay. As a result, its judgment is reversed and the cause is remanded.[3]
REVERSED AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Jeanette argues that she was not served with a copy of Jay’s posttrial brief before the entry of the final judgment. We note that Jay did not attach to his posttrial brief a certificate of service indicating service of the brief on Jeanette.

. On appeal, both Jay and Jeanette agree that the trial court's finding that they are tenants in common of the property was correct. Thus, we accept that aspect of the judgment as accurate.

. Because we resolve the appeal in this manner, we pretermit consideration of Jeanette’s additional appellate arguments.