**Jay MYERS**

v.

**Joanna MYERS.**

2141038.

Court of Civil Appeals of Alabama.

April 8, 2016.

Thomas H. Nolen, Jr., Mobile, for appellant.

Joanna Myers, pro se.

MOORE, Judge.

Jay Myers ("the father") appeals from a judgment of the Mobile Circuit Court ("the trial court") modifying the terms of the judgment divorcing him and Joanna Myers ("the mother") to allow the mother to determine which school the parties' children are to attend. We reverse the trial court's judgment and remand the case.

## Procedural History

The mother and the father were divorced by a judgment entered by the trial court on July 29, 2008. That judgment ratified an agreement of the parties giving them joint legal and physical custody of their children and requiring the father to pay, among other things, "the tuition for the minor children so long as they attend a private school in Mobile County."

On December 23, 2011, the mother filed a motion for a rule nisi and to modify physical custody of the children, which was assigned case number DR–07–500560.01. The father filed an answer and a counterclaim seeking, among other things, sole custody of the children; the counterclaim was assigned case number DR–07–500560.02. The father subsequently amended his counterclaim to also request, among other things, termination of his obligation to pay the children's private-school tuition. On July 30, 2013, the mother filed an amendment to her motion for a rule nisi, asserting that the father owed $5,000 for the children's private-school expenses for the 2012–2013 academic year and that "he [had] failed to pay registration for 2013–2014 academic year and the costs and tuition for said year."

On November 6, 2014, the trial court scheduled a consolidated trial of both cases for April 20, 2015. At the outset of the trial, the following colloquy occurred:

"THE COURT: All right. In the matter of *Jay Myers versus Joanna Myers*, as I understand, the issue where Mr. Mims was the Guardian Ad Litem has been resolved and he has been relieved of any further duties.

"Y'all are both in agreement with that?

"[Counsel for the father]: That is correct. Yes, sir.

"[Counsel for the mother]: Yes, sir.

"THE COURT: That would be in the .01, that's the motion for Rule Nisi and Custody?

"[Counsel for the father]: Yes, sir.

"THE COURT: Defendant's—okay.

"So we have .02, which is, [counsel for the father], your client's counterclaim?

"[Counsel for the father]: Yes, sir. And we think that's moot now, too, as well.

"THE COURT: What do we have?

"[Counsel for the father]: The issue that we have is the amended motion to require [the father] to pay for the tuition at St. Luke's School.

" . . . .

"THE COURT: All right. In the matter of *Jay Myers versus Joanna Myers*, we're now here on the [mother's] amended motion for Rule Nisi."

Following the trial, at which the court heard the testimony of the mother, the father, and the children's paternal grandmother, the trial court entered a judgment on April 22, 2015, stating, in pertinent part:

"1. THAT [the mother's] Motion for a Rule Nisi, and Motion for Custody (.01) has been resolved hence no order is entered concerning same. [The father's] Counter–Claim (.02) is moot. The only pending issue is the [mother's] Amended Motion for Rule Nisi (.01).

" . . . .

"3. THAT paragraph 3. of the Judgment of Divorce as agreed upon by the parties is hereby reaffirmed. The [father] shall be responsible for paying tuition of the minor children so long as they attend private school in Mobile County pending their graduation from the twelfth (12th) grade.

"4. THAT the [mother] shall determine which school the children are to attend."

The father filed a postjudgment motion on May 21, 2015, arguing that the trial court had erred in modifying the divorce judgment to give the mother sole decision-making authority over which school 'the children would attend; the trial court denied that motion on August 7, 2015. The father timely filed his notice of appeal to this court on September 17, 2015.

*Analysis*

█ The father argues on appeal that the trial court erred by modifying legal custody of the children to allow the mother to determine which school the children attend when there was no claim pending for a modification of legal custody and no evidence to support the modification. We find the first issue dispositive of the appeal.

The father correctly points out that the mother never sought to modify the joint-legal-custody arrangement contained in the divorce judgment to give her school-choice authority for the children. In regard to custody, the mother requested only that the divorce judgment be modified to award her sole physical custody of the children. In his counterclaim, the father did request a modification of the divorce judgment to award him sole custody of the children, which would have included sole legal custody, but he voluntarily dismissed his counterclaim as being moot before the trial commenced. *See* Rule 41(a)(1) & (c), Ala. R. Civ. P. (authorizing voluntary dismissal of counterclaim by stipulation); and

Rule 47, Ala. R.App. P. ("agreements made in open court ... are binding, whether such agreements are oral or written"). The parties informed the court, and the court declared to the parties, at the outset of the trial, that the only claim to be litigated was the claim raised in the mother's amended motion for a rule nisi, which sought only payment by the father of the children's past-due private-school tuition.

█ In *Carden v. Penney*, 362 So.2d 266 (Ala.Civ.App.1978), this court explained that Rule 54(c), Ala. R. Civ. P., authorizes a trial court to grant to a party the relief to which that party is entitled "irrespective of the request for relief contained in the pleadings." 362 So.2d at 268.

"However, Rule 54(c) does not sanction the granting of relief not requested in the pleadings where it appears that a party's failure to ask for particular relief has substantially prejudiced the opposing party. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Rental Development Corporation of America v. Lavery*, 304 F.2d 839 (9th Cir.1962); *Penney v. Carden*, [356 So.2d 1188 (Ala.1978)]. Moreover, if the relief granted pursuant to Rule 54(c) is not justified by the proof or is justified by proof which the opposing party has not had an opportunity to challenge, the relief granted should not be sustained on appeal. *See* 10 Wright & Miller[,] *Federal Practice and Procedure* § 2662 (1973). Accordingly, logic dictates that in those situations where an opposing party has no notice, by pleadings or otherwise, regarding the claim upon which relief is granted by means of Rule 54(c) and is thereby denied an opportunity to have challenged or defended against such a claim, the opposing party has suffered substantial prejudice and the judgment granting relief must be reversed. See *United*

*States v. Hardy*, 368 F.2d 191 (10th Cir.1966). Indeed, such a rule is fundamental to the essentials of due process and fair play. *Sylvan Beach, Inc. v. Koch*, 140 F.2d 852 (8th Cir.1944)."

362 So.2d at 268–69.

In this case, the father was not notified in the pleadings of any claim for a modification of the joint-legal-custody provisions of the divorce judgment. The record also shows that the parties did not voluntarily litigate that issue during the trial. On direct examination, the mother testified that the father had previously paid the children's private-school tuition but that he had stopped making such payments two years earlier. The mother then testified as follows:

"[By counsel for the mother]: And what are you asking the Court to do?

"[The mother]: I would like the Court to just go by the agreement, our agreement, that we did when we were divorced. And from what I signed, it said for him to pay the school tuition."

On cross-examination, the mother testified that the father had, at some point, informed her that he did not want the children to continue attending St. Luke's School, but she had enrolled them there over his objection. The mother then testified:

"[Counsel for the father]: Now, so the real question here is you want the power to decide if the children attend St. Luke's School, don't you? You want that power?

"[The mother]: No, I don't want that power."

The mother further testified that she wanted the father to pay the tuition despite the father's disagreement with her school choice.

The mother next called the father as a witness, propounding the question as to who had originally selected St. Luke's as the school for the children. Counsel for the father objected to the relevancy of the question, prompting the following colloquy:

"[THE COURT]: Overruled. They had an agreement. And I, at least, want to know that so I know what was done at the beginning and then we'll look at the change.

"You can answer that one question.

"[Counsel for the father]: If the Court please, there's no motion to modify pending about ordering him—the children to attend St. Luke's.

"[THE COURT]: That's fine.

"[Counsel for the father]: It's only an interpretation of the Judgement of Divorce.

"[THE COURT]: That's fine. But I'm going to, at least, let him answer that one question."

After that exchange, the father testified that the mother had selected St. Luke's. The father further testified that he resided close to St. Luke's but that he planned to move to an area where the children could attend a public school that the father believed would better serve the parties' daughter's special educational needs. The mother's counsel then questioned the father as to whether the divorce judgment required the children to attend private school at the expense of the father.

On cross-examination, the father testified that he originally had not objected to the children's attending St. Luke's. He testified, however, that, as the parties' daughter progressed from first to third grade, he had become concerned that St. Luke's was not adequately addressing her special educational needs. The father testified that, although he believed the parties' son would excel regardless of the school he attended, he had objected to the children's attending St. Luke's because of his concerns for the parties' daughter. The father testified that he had investigated and discovered better school options

with special-education services and that his objection to St. Luke's was not based on monetary considerations. The father testified that the mother would not discuss his concerns because she believed the children were doing fine at St. Luke's. The father testified that the mother had unilaterally decided to enroll the children at St. Luke's without his knowledge or consent even though she did not have such authority in the divorce judgment. The father testified that he wanted the trial court to allow him to put the children in a school that served their needs and that he should be allowed a voice in the school decision if he was going to pay the tuition.[1]

During cross-examination, the mother specifically testified that she was not requesting sole authority over the choice of which school the children would attend. When the trial court implied that it might decide the question of whether the divorce judgment should be modified on that point, the father immediately objected, stating that no modification claim was before the trial court. The trial court acknowledged that position, and the parties and the court thereafter proceeded with the tacit understanding that a modification claim would not be litigated or adjudicated. Although the father elaborated on the nature of the parties' disagreement over school choice, that testimony related solely to the father's defense to the mother's amended motion for a rule nisi—that he was entitled under the divorce judgment to joint authority over the children's education, that he had valid reasons for objecting to the

children's attending St. Luke's, and that he was not willfully violating the terms of the divorce judgment by refusing to pay the tuition for a private school to which he had objected.

■  Rule 15(b), Ala. R. Civ. P., provides a trial court with the authority to amend the pleadings to conform to the evidence when the parties impliedly consent to litigate an issue. However, if the evidence purportedly related to an unpleaded claim overlaps with, or actually relates solely to, a pleaded claim, introduction of that evidence will not imply the consent necessary to allow amendment of the pleadings under Rule 15(b). See CVS/Caremark Corp. v. Washington, 121 So.3d 391, 398–99 (Ala. Civ.App.2013). Because the evidence presented related to a pleaded claim, and because the mother unequivocally testified that she was not injecting a claim for sole authority over school choice, Rule 15(b) does not apply under the circumstances in this case.[2]

In Carden, the Cardens litigated a dispute with W.E. Penney over the ownership of 20 acres of land. During the trial of the case, Penney testified that he had made improvements on the land. When Penney's counsel questioned Penney as to the value of those improvements, counsel for the Cardens objected on the ground that no claim for payment for those improvements had been raised in the pleadings. 362 So.2d at 269. The trial court in that case overruled the objection and later

---

1.  The paternal grandmother also testified that she had been paying the children's tuition for the preceding two years.

2.  At one point in his testimony, the father testified that he wanted the trial court "[t]o allow me to put my children in a school that will serve their needs." In context, the father was requesting that the trial court enforce his right to joint authority over the choice of the children's school. However, even assuming that the father's statement could be interpreted as a request that the trial court allow the *father* sole or final decision-making power with regard to which school the children attend, that testimony cannot be contorted into a claim by the *mother* to modify the joint-legal-custody provisions of the divorce judgment, so the pleadings cannot be considered amended based on that isolated portion of the father's testimony.

awarded Penney damages for the improvements. This court reversed the judgment on the ground that the Cardens had been deprived of an opportunity to fully litigate the issue of the value of Penney's improvements because they had not been notified of the claim before trial. 362 So.2d at 269–70. This court noted that the trial court had found only that the issue had been " 'touched upon' " in the original trial, but " 'was not fully litigated by either side.' " 362 So.2d at 268.

In this case, the trial court entered a judgment that effectively removes the father's right to joint authority over the choice of the children's school, but enforces the father's obligation to pay any private-school tuition. That judgment substantially alters the agreement of the parties that was ratified in the divorce judgment. The trial court has the authority to modify the divorce judgment, but it may do so only in a manner consistent with due process and fair play. In this case, the father was substantially prejudiced because he did not receive sufficient notice so that he could be prepared to litigate the claim. The testimony of the parties "touched upon" the question of who should have the authority to decide which school the children attend, but, because of the lack of notice of a modification claim, that issue "was not fully litigated by either side." The father pointed out the error in his postjudgment motion, but the trial court denied that motion. "The trial court's failure to find that the [father] had been substantially prejudiced constituted clear and palpable error." *Carden*, 362 So.2d at 269–70.

For the foregoing reasons, the judgment is reversed insofar as, in paragraph 4, it orders that the mother "shall determine which school the children are to attend," and the case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.