MOORE, Judge.
Lockheed Martin Corporation (“Lockheed”) appeals from a judgment of the Montgomery Circuit Court (“the trial court”) in favor of the State Department of Revenue (“the Department”). We dismiss the appeal in part and affirm the judgment in part.

Procedural Background

In 1998 and 1999, Lockheed paid Alabama franchise taxes as a foreign corporation under former § 40-14-41, Ala.Code 1975. On March 23, 1999, the United States Supreme Court issued its opinion in South Central Bell Telephone Co. v. Alabama, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999) (“South Central Bell I”), in which it held the franchise tax established in former § 40-14-41 to be unconstitutional. Based on that holding, Lockheed petitioned the Department for a refund of the franchise taxes it had paid for tax years 1998 and 1999.[1] The Department did not act on those petitions within six months, so they were denied by opera *1125 tion of law. See § 40-2A-7(c)(3), Ala.Code 1975. Lockheed subsequently appealed to the trial court in 2001. On August 18, 2015, the trial court entered a judgment denying Lockheed’s refund claims asserted on appeal.[2] Lockheed timely appealed to this court.

Analysis

I. Historical Background
Before the enactment of the Alabama Business Privilege Tax Act of 1999, § 40-14A-1 et seq., Ala.Code 1975, Alabama law imposed different franchise taxes on domestic and foreign corporations. Former § 40-14-40, Ala.Code 1975, required corporations organized and existing under Alabama law to pay tax in amount equal to 1% of the par value of the capital stock of the corporation, subject to a $50 minimum tax. “Par value” is the dollar value shown on the face of the shares of stock in a corporation, which may be arbitrarily set by the corporation. See, e.g., Black’s Law Dictionary 1298 (10th ed.2014). Alabama law did not prohibit a domestic corporation from setting the par value of its stock at a level far below its book or market value for franchise-tax purposes. As a result, a domestic corporation could reduce its franchise-tax liability by reducing the par value of its capital stock. On the other hand, former § 40-14-41(a) required corporations from outside Alabama to pay 0.3% of the value of “the actual amount of its capital employed” in Alabama, as “capital” was explicitly defined in former § 40-14-41(b). Consequently, the Alabama tax scheme denied foreign corporations the ability to control their tax base in the same way as domestic corporations.
In South Central Bell I, supra, the United States Supreme Court determined that the Alabama franchise-tax scheme “facially discriminates against interstate commerce” because “Alabama law gives domestic corporations the ability to reduce their franchise tax liability simply by reducing the par value of their stock, while it denies foreign corporations that same ability.” [3] 526 U.S. at 169. The Court determined that Alabama’s franchise-tax scheme imposed an unequal tax burden on foreign corporations, citing undisputed evidence in the record indicating that “the average domestic corporation pays only one-fifth the franchise tax it would pay if it were treated as a foreign corporation.” Id. The Court remanded the case to the Alabama Supreme Court “for further proceedings not inconsistent with th[e Supreme Court’s] opinion.” 526 U.S. at 171.
On remand, the Alabama Supreme Court held that the United States Su *1126 preme Court had intended for its decision declaring the Alabama franchise-tax scheme unconstitutional to be applied retroactively, leaving the question “remaining ... what remedy, if any, should be fashioned” in order to afford the taxpaying foreign corporations due process. South Cent. Bell Tel. Co. v. State, 789 So.2d 147, 148 (Ala.2000) (“South Central Bell II”). In Atchison, Topeka & Santa Fe Ry. v. O’Connor, 223 U.S. 280, 285, 32 S.Ct. 216, 56 L.Ed. 436 (1912), the United States Supreme Court held that due process requires that a state provide a taxpayer who has paid a tax under protest as to its legality a “clear and certain remedy.” In McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the United States Supreme Court determined that, when a tax statute unconstitutionally discriminates against interstate commerce, a state has certain flexibility in remedying that discrimination against interstate commerce, which our supreme court summarized as giving the state the alternative of:
“1) giving a taxpayer a refund;
“2) collecting back taxes from the favored class;
“3) combining aspects of these first two options;
“4) barring a refund to a taxpayer that did not follow a state procedural law in seeking the refund; or
“5) refusing to give a remedy, in the rare case in which the State relied on now overturned precedent and the State now faces an extreme hardship if it must give a remedy.”
South Central Bell II, 789 So.2d at 148-49 (footnotes omitted). As to the first option, the Supreme Court concluded in McKes-son that a state could voluntarily pay a full refund, but, it said, the state could also retain that portion of the tax paid that would be valid under the Commerce Clause “by refunding to petitioner the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its [domestic] competitors actually received.” 496 U.S. at 40. However, determining that there was an incomplete record, our supreme court did not decide which remedy Alabama would employ.[4]
While the South Central Bell cases wound through the appellate-court system, Gladwin Corporation, a foreign corporation, and Arizona Chemical Company, another foreign corporation, filed a class-action lawsuit in the Montgomery Circuit Court to obtain refunds for the franchise taxes that they, and 18,000 other similarly situated foreign corporations, had paid to the state. Cynthia Underwood, who was at that time the commissioner of the Department, appealed from the class-certification order, arguing that the taxpayers in the class had failed to invoke the jurisdiction of the circuit court because they had not followed the administrative procedures to assert a refund petition set forth in the Alabama Taxpayers’ Bill of Rights and Uniform Revenue Procedures Act (“the TBOR”), § 40-2A-1 et seq., Ala.Code 1975. Our supreme court held that the foreign corporations could not maintain a direct action against the state because of sovereign immunity but that the taxpayers must strictly comply with the TBOR in *1127 order to prosecute their claim for a refund. Patterson v. Gladwin Corp., 835 So.2d 137, 140 (Ala.2002).
In Ex parte Surtees, 6 So.3d 1157 (Ala.2008), which affirmed in part and reversed in part this court’s decision in Vulcan Lands, Inc. v. Surtees, 6 So.3d 1148 (Ala.Civ.App.2007), our supreme court held that the state could not refuse to issue a refund of the foreign-corporation franchise tax that had been paid by Vulcan Lands, Inc., in 1999 because the state, by that point, was no longer relying on Alabama precedent preceding South Central Bell I that had validated the Alabama franchise-tax scheme, specifically White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989). The supreme court also held that, in order to obtain a refund, a foreign corporation did not have to prove the difference between the franchise tax it had paid and the franchise tax that had been paid by a direct domestic corporate competitor. Although in McKesson the United States Supreme Court had referred to domestic corporate competitors, our supreme court clarified that the McKesson Court had not intended that a foreign corporation must identify a “mirror-image” domestic corporation and establish the amount of tax paid by that domestic corporation in the same tax year in order to prove the extent of its injury. In conclusion, the supreme court specifically stated that it was not addressing other issues, including
“the amount of franchise taxes Vulcan actually would have paid in 1999 had it been assessed as a domestic corporation. See ... McKesson, 496 U.S. at 49 n. 33, 110 S.Ct. 2238 (where a refund of taxes collected in violation of the Commerce Clause is mandated, ‘the State’s obligation under the Due Process Clause ... extends only to refunding the excess taxes collected under the [discriminatory tax scheme]’).”
Ex parte Surtees, 6 So.3d at 1164.
II. Trial-Court Proceedings
As stated earlier, Lockheed filed an appeal to the trial court from the denial by operation of law of its petitions for a refund of the franchise taxes it had paid for tax years 1998 and 1999. After the case was reactivated from the trial court’s administrative docket, see note 2, the Department moved to dismiss the appeal based on the trial court’s lack of subject-matter jurisdiction. Among other arguments, the Department contended that, for the 1998 tax year, Lockheed had failed to meet the mandatory deadlines established in the TBOR for petitioning for a refund. The Department conceded that the trial court could consider the appeal for tax year 1999, but only to the extent of the grounds asserted in the original refund petition, which was based on the holding in South Central Bell I. After receiving responsive memoranda from Lockheed and conducting a hearing on the matter, the trial court denied the motion to dismiss and scheduled a bench trial to consider the merits of the appeal.
At the commencement of the bench trial, the Department maintained its position that the franchise-tax-refund claim filed by Lockheed for tax year 1998 had not been timely filed. In regard to the franchise-tax-refund claim for tax year 1999, the Department contended that Lockheed bore the burden of presenting evidence to prove the amount of refund to which it was entitled. Lockheed orally moved for a summary , judgment on the franchise-tax-refund claim for tax year 1999, but the trial court indicated that, at best, Lockheed would be entitled to a partial summary judgment as to the timeliness of that claim *1128 but that “it appears the amount of the refund is subject to dispute.”
Lockheed thereafter called as its only witness Jeffrey Fasick, a senior tax manager for the company whose job duties included the filing of franchise-tax documents required by the State of Alabama. Fasick testified as to the internal procedures used by Lockheed to generate and file its franchise-tax documents, including for tax years 1998 and 1999. During Fa-sick’s testimony, the Department stipulated that Lockheed had paid $733,649 in franchise taxes for tax year 1999. After Lockheed rested its case, the Department argued that Lockheed had failed to present any evidence on the issue of the amount of refund it was due. Lockheed objected, and the trial court inquired if Lockheed wanted to reopen the case to introduce evidence on that point. Counsel for Lockheed responded: “If we have to. Maybe not at this point right now.” Lockheed finally argued that it should be presumed that, given the same leeway as a domestic corporation, it would have manipulated its par value so that it would have paid only the minimum franchise tax of $50.
The trial court entered its final judgment denying Lockheed’s refund claims asserted- on appeal. That judgment provides:
“This cause having come before the Court for Bench Trial, testimony and evidence having been considered, it is hereby
“ORDERED, ADJUDGED AND DECREED, [Lockheed’s] request for tax refunds for year 1997 is withdrawn, for tax years 1996 and 1998 [Lockheed] failed to meet filing deadline requirements and therefor the tax refund is DENIED, for tax year 1999 [Lockheed] met the filing deadline requirements and requested a tax refund of 100% of tax paid, however the evidence is insufficient for the Court to determine what amount of refund [Lockheed] would be entitled to, therefore [Lockheed] having failed to meet the burden of proof [for] said request for tax refund for tax year 1999 is DENIED.”
Lockheed did not file a postjudgment motion but directly appealed from the final judgment to this court.
III. The Franchise-Tax-Refund Claim for Tax Year 1998
Under South Central Bell II, supra, the Department could lawfully deny Lockheed a refund of its 1998 franchise taxes on the basis that it “did not follow a state procedural law in seeking the refund.” 789 So.2d at 149. In Alabama, the TBOR represents the state’s exclusive procedural law for seeking a refund of franchise taxes, the terms of which a taxpayer must strictly comply with. Ex parte Jefferson Smurfit Corp., 951 So.2d 659, 665-66 (Ala.2006). In its final judgment, the trial court did not specify the filing deadlines of the TBOR that Lockheed failed to meet, but we determine that Lockheed did not establish that it had timely filed its franchise-tax-return extension request for tax year 1998.
At all relevant times, § 40-2A-7(c)(2)a., Ala.Code 1975, a part of the TBOR, has provided, in pertinent part:
“A petition for refund shall be filed with the department ... within (i) three years from the date that the return was filed, or (ii) two years from the date of payment of the tax, whichever is later, or if no return was timely filed, two years from the date of payment of the tax.”[5]
*1129 (Emphasis added.) The parties agree that the 1998 franchise-tax return was due on March 16, 1998.[6] However, in 1998 a taxpayer could file on the franchise-tax-return due date a request for an extension of up to six months to file a franchise-tax return. See Ala. Admin Code (Dep’t of Revenue), former Rule 810-2-3-.08 (repealed Nov. 30, 2006). At trial, the parties disputed whether Lockheed had timely filed its extension request. If it did not, then the due date for the filing of the franchise-tax return would have remained March 16,1998. Id.
Fasick testified that Lockheed had filed the extension request by depositing the request in the United States mail. It is undisputed that the Department did not receive the extension request on or before March 16, 1998. Section 40-l-45(a)(l), Ala.Code 1975, provides, as it did in 1998, that, if an extension request arrives at the Department beyond the filing due date, “the date of the United States postmark stamped on the cover in which such [extension request] is mailed shall be deemed to be the date of delivery....” Lockheed did not present any evidence of the United States postmark stamped on the envelope in which it mailed the 1998 franchise-tax-return extension request.
Section 40-l-45(b), Ala.Code 1975, provides: “This section shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by the Department of Revenue.” During the relevant periods, the Department had not promulgated any regulations authorizing acceptance of articles bearing a postage-meter imprint. See Ward v. Alabama Dep’t of Revenue, Op. of Ala. Dep’t Revenue, Admin. Law Div., Docket No. INC 95-396 (Nov. 7, 1995) (Order Dismissing Appeal); but see Rule 810-1-5-.01(4), Ala. Admin. Code (Dep’t of Revenue) (eff. Feb. 9, 2000) (regulating receipt of articles bearing postage-meter imprint).
Lockheed argues that the Department, through a series of opinions issued by the Department’s administrative-law judges, see Schoen v. Alabama Dep’t of Revenue, Op. of Ala. Dep’t Revenue, Admin. Law Div., Docket No. INC. 11-211 (Mar. 23, 2011) (Final Order); Zhang v. Alabama Dep’t of Revenue, Op. of Ala. Dep’t Revenue, Admin. Law Div., Docket No. INC. 10-1044 (Jan. 14, 2011) (Final Order); and Alabama Dep’t of Revenue v. Eli Witt Co., Op. of Ala. Dep’t Revenue, Admin. Law Div., Docket No. MISC. 91-125 (Aug. 6, 1991) (Final Order), has recognized that § 40-1-45 does not provide the exclusive means to prove timely mailing but that a fact-finder can consider “other evidence” when deciding when an extension request was mailed. We do not believe those opinions by the Department’s administrative-law judges stand for the proposition asserted by Lockheed, which would appear to be inconsistent with the plain and unambiguous language of § 40-1-45, but we need not decide that point because the “other evidence” upon which Lockheed relies does not establish that the 1998 franchise-tax return was timely filed. .
Fasick testified that Lockheed’s internal system notified him that Lockheed needed to file the franchise-tax-return extension *1130 request by March 15, 1998, which was a Sunday. Lockheed introduced into evidence a copy of a document memorializing that a check in the amount of $467,000 was written to the Department on the preceding Friday, March 13, 1998. Lockheed also submitted into evidence the franchise-tax-return extension request, which was dated March 16, 1998. Fasick testified that the 1998 activity list, which was also introduced into evidence, showed that his office delivered the completed extension request to the mail room on March 15, 1998, which, we note, preceded the date affixed to the extension request. At any rate, the activity list did not show when the mail room actually placed the request in the mail. Fasick testified: “I do not know when [the extension request] was actually mailed.”
At some point, Fasick was notified that the Department was penalizing Lockheed and charging interest because it had filed the extension request late. The Department submitted into evidence a December 8, 1998, form addressed to Lockheed notifying Lockheed that its extension request had not been filed timely. Hal Lambert, a tax accountant for Lockheed, responded to that notification by a letter dated January 13, 1999, in which he stated, in pertinent part:
“All steps for filing the extension payment ... had been completed by March 16,1998 and logged out of the Corporate Tax Department on March 16, 1998. At this point it is impossible for us to determine what caused the delay in having this payment mailed on March 17, 1998. Again the 1998 return was filed under the extension predicated on the fact that the extension payment had been mailed on March 16, 1998 which would have made it a timely filed extension.”
(Emphasis added.)[7] Fasick could not explain why Lambert had indicated that Lockheed did not mail the 1998 franchise-tax-return extension request until March 17,1998.
Lockheed argues that it presented undisputed evidence indicating that it mailed the 1998 franchise-tax-retum extension request on March 16, 1998. However, the “undisputed” evidence indicates only that the mail reached the Lockheed mail room on March 16, 1998. Lockheed presented no evidence indicating that the extension request was actually deposited in the United States mail on that date. The only evidence on that precise point consisted of Lambert’s letter to the Department, which indicated a March 17, 1998, mailing date.
“It is ... well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.” Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). Appellate courts presume that a trial court resolves disputed questions of fact correctly when it considers a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). An appellate court will not disturb a trial court’s factual determination unless it is clearly erroneous and against the great weight of the evidence. Kennedy v. *1131 Boles Invs., Inc., 53 So.3d 60, 67-68 (Ala.2010). From the evidence in the record, the trial court justifiably could have determined either that Lockheed did not prove, even by “other evidence,” that it had complied with § 40-1-45 or that the Department actually proved that the 1998 franchise-tax-return extension request had not been mailed until March 17, 1998, one day late.
Because the record supports the trial court’s determination that Lockheed did not meet the statutory deadline for filing its 1998 franchise-tax-return extension request, under § 40-2A-7(c)(2)a., Lockheed had two years from the date of the payment of the franchise tax to file a refund petition. Lockheed paid the franchise tax when it submitted its extension request, see § 40-l-45(a) (applying “mailbox rule” to tax payments), which the trial court impliedly determined to be March 17, 1998. Lockheed did not file its 1998 franchise-tax-refund petition until, at the earliest, September 15, 2000, which was well over two years after the payment was made. Lockheed did not strictly comply with the refund-petition filing deadline in § 4Q-2A-7(c)(2)a., so the trial court did not acquire jurisdiction to consider any appeal regarding that refund claim. See Patterson, supra.
Because it lacked subject-matter jurisdiction over the 1998 franchise-tax-refund claim, the trial court had no authority but to dismiss the claim. “ ‘Any other action taken by a court lacking subject matter jurisdiction is null and void.’ ” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1029 (Ala.1999) (quoting Beach v. Director of Revenue, 934 S.W.2d 315, 318 (Mo.Ct.App.1996)). In this case, the trial court purported to deny the claim, but that action, constituting a ruling on the merits, is a void judgment that will not support an appeal. Hunt Transition & Inaugural Fund, Inc. v. Grenier, 782 So.2d 270, 274 (Ala.2000). Hence, we dismiss that aspect of the appeal relating to the 1998 franchise-tax-refund claim. See generally Vann v. Cook, 989 So.2d 556 (Ala.Civ.App.2008).
IV. The 1999 Franchise-Tax-Refund Claim
According to McKesson, supra, a state can, consistent with due process, refund the excess tax collected as a result of its discriminatory practice or can bar a refund for failure to adhere to procedural law in seeking the refund. In closing arguments, Lockheed stated that it was petitioning for a refund based on “the difference between what it would have paid as a domestic corporation and what it actually paid as a foreign corporation.” Lockheed maintained that it would have paid only the statutory minimum of $50 as a domestic corporation if it had been given the same leeway to manipulate its par value that was afforded to domestic corporations under former § 40-14-40. The Department objected, and the trial court agreed, that Lockheed had not presented any evidence to support that contention. In its final judgment, the trial court determined that Lockheed could not obtain a refund because it had failed to discharge its burden of proving the amount of the refund it was due. On appeal, Lockheed argues that the trial court erred in imposing upon it the burden of proving through evidence its right to the refund it claims.
“ ‘In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover.’ United States v. Janis, [428 U.S. 433, 440,] 96 S.Ct. 3021[, 3025] (1976).” Home Depot USA, Inc. v. State Dep’t of Revenue, Op. of Ala. Dep’t Revenue, Admin. Law Div., Docket No. S. 06-1079 (June 6, 2008) (Final Order). At trial, Lockheed relied on South Central *1132 Bell I to argue that, as a matter of law, it was injured by the imposition of a discriminatory franchise tax so it did not have to present further evidence to obtain its refund. That legal injury undoubtedly bestowed standing on Lockheed to challenge the constitutionality of the former franchise tax on foreign corporations. See, e.g., Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007); General Motors Corp. v. Tracy, 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997); and Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). However, neither South Central Bell I nor any of the cases cited by Lockheed establish that, as a matter of law, the legal injury that gives a foreign corporation standing also ipso facto satisfies its burden of proving the extent of its monetary damages. See, e.g., Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (indicating that the question of standing is a sepai*ate inquiry from substantive issues). The burden still remained on Lockheed to prove the amount of refund that would remedy the discrimination pursuant to the McKesson standard.
Under the former franchise-tax scheme, Lockheed, if it were a domestic corporation, would have owed a franchise tax based on 1% of the par value of its stock in 1999. Lockheed did not present any evidence of the par value of its stock at trial, protesting in closing argument that it had not been afforded the opportunity to reduce its par value so as to reduce its franchise-tax liability. However, during the trial, the Department elicited testimony from Fasick that Lockheed had paid franchise taxes in other jurisdictions based on the par value of its stock and that, to his knowledge, Lockheed had never reduced its par value. Lockheed did not question Fasick regarding how Lockheed had established the par value of its stock, whether it could, consistent with its corporate charter, reduce that par value, or whether it would have benefited Lockheed to manipulate its par value solely to reduce its Alabama franchise-tax liability, given all the relevant tax implications and other considerations. Lockheed did not establish through Fasick or any other means that, if given the leeway to reduce its par value, it not only would have done so or that its tax base would have produced a franchise-tax liability at or below the $50 minimum. Lockheed asserts that it could not have feasibly proven what amount of franchise taxes it would have paid in 1999 as a domestic corporation, but it did not even attempt to prove that point through admissible evidence.
During closing arguments, the Department also pointed out that, in South Central Bell I, the taxpayers adduced evidence indicating that “the average domestic corporation pays only one-fifth the franchise tax it would pay if it were treated as a foreign corporation.” 526 U.S. at 169. Although Lockheed had already rested its case, the trial court inquired if Lockheed intended to present similar evidence of how the disparity in the taxation scheme had impacted Lockheed. Lockheed’s counsel replied: “If we have to. Maybe not at this point right now.” Lockheed did not argue that the trial court was placing upon it an unfair and unconstitutional burden of proof, a point we cannot consider for the first time on appeal. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate c]ourt cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”).[8]
*1133 In McKesson, the Supreme Court concluded that the process due a taxpayer includes “an opportunity to contest the validity of the tax and a ‘clear and certain remedy designed to render the opportunity meaningful by preventing any permanent unlawful deprivation of property.” 496 U.S. at 40. In the present case, the Department afforded Lockheed the clear and certain remedy of a refund of the excess franchise taxes paid by Lockheed upon presentation of sufficient evidence of that amount. Lockheed failed, however, to avail itself of that opportunity by presenting evidence to support its refund claim. Lockheed instead argued, as it does again on appeal, that the refund amount it claimed should be presumed as a matter of law. We are not persuaded that the law dictates the refund amount Lockheed claims, but we are convinced that the trial court correctly ruled that Lockheed bore the burden of proving through sufficient evidence the refund amount. Lockheed has not shown that the trial court committed any error. Therefore, we affirm that portion of the trial court’s judgment denying the 1999 franchise-tax-refund claim.
AFFIRMED IN PART AND APPEAL DISMISSED IN PART.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. Lockheed also requested a refund for the tax years 1996 and 1997; however, Lockheed appeals only the denial of its tax-refund requests for the 1998 and 1999 tax years, so this opinion addresses only those years.

. The trial court placed the case on its administrative docket on January 10, 2002, based on an agreement of the parties. On July 23, 2014, the trial court ordered the parties to show cause within 30 days as to why the case should not be dismissed. In response, Lockheed filed a motion to set the case for trial, which the trial court granted.

. Former § 40-14-40 actually did not refer to “par value” but based the domestic-corporation franchise tax only on the value of its “capital stock,” which was construed by Alabama courts to mean the par value of the stock issued by the corporation to its shareholders. After the United States Supreme Court issued its opinion holding the Alabama franchise-tax scheme to be unconstitutional, the Alabama Supreme Court determined that the legislature had not intended to tax the "capital stock” of domestic corporations based on only "par value” and overruled the line of cases that had held otherwise. See South Cent. Bell Tel. Co. v. State, 789 So.2d 133 (Ala.1999). The court issued that decision as an "interim order” to advise the legislature, which was then drafting the new franchise-tax scheme that would become the Alabama Business Privilege Tax Act of 1999, on the legal meaning of the term "capital stock.”

. In South Central Bell II, our supreme court remanded the case to the lower court to develop the position of the parties as to the appropriate remedy as well as to marshal the evidence in support of that position. However, the parties settled their dispute before the case could be returned to the supreme court for further consideration. See Ex parte Surtees, 6 So.3d 1157, 1159 (Ala.2008).

. Section 40-2A-7 was amended effective June 5, 2007, and was amended again effec *1129 tive October 1, 2014. Neither of those amendments affected the language in the quoted provision.

. Ordinarily, the franchise-tax return would have been due on March 15, 1998, see Ala. Code 1975, former § 40-14-44 and former § 40-14-48 (repealed by Ala. Acts 1999, Act No. 99-665, § 9), but that date fell oh a Sunday, so the filing date was carried over to the next working day pursuant to Ala.Code 1975, § 1-1-4, and Ala. Admin. Code (Dep’t of Revenue), Rule 810—1—5—.01(b).

. In that letter, Lambert memorialized a telephone conversation in which the Department agreed to waive any penalty or late-filing charges. Lockheed argues that the waiver constitutes "other evidence” proving that Lockheed timely mailed the 1998 extension request. We disagree. The evidence in the record shows that the Department never conceded that Lockheed had timely filed the extension request but, rather, that the Department waived the penalties solely to induce Lockheed to implement an electronic-funds-transfer payment system to avoid future delivery problems.

. We also do not consider Lockheed’s argument, raised for the first time on appeal, see *1133 Andrews, supra, that requiring Lockheed to prove what amount of franchise taxes it would have paid as a domestic corporation would be unconstitutional because Alabama’s franchise-tax scheme did not provide for apportionment to account for the value of a domestic corporation's assets located outside the taxing state.